WICKER, Judge.
Defendant, Employers Insurance of Wausau (WAUSAU), appeals a judgment against it in the amount of $400,000.00, contending that this amount is in excess of its policy limits. The issue is the effect of a waiver reducing uninsured-underinsured motorist (UM) coverage which was only belatedly reflected in an endorsement to the policy. We reverse and render.
Plaintiff, Ralph E. Badeaux, on December 23, 1983, was driving a pick-up truck owned by Mid-South Bottling Company (MID-SOUTH). Defendant, Durel Cook, rear-ended him. Badeaux sued Cook and his liability insurer, settling for the policy limits prior to trial and dismissing these defendants. Badeaux also sued Wausau, Mid-South’s UM carrier.
Badeaux sought a copy of the insurance contract between Wausau and Mid-South. In response to his November 5, 1985, request for production of documents, Wau-sau provided a copy of the policy showing UM coverage of $500,000.00. Wausau supplemented its response on the date of trial, May 6, 1986, by introducing an endorsement reducing UM coverage on the vehicle to $50,000.00. The trial judge continued *726 the matter, and it was eventually tried over a three-day period in November 1987.
The jury found that Wausau’s policy limit was $500,000.00 and awarded Badeaux $400,000.00 in damages. Wausau complains that (1) the jury erred in not finding there had been an effective waiver of the higher limits, (2) the judge submitted an incorrect jury verdict form to the jury, (3) the judge allowed prejudicial opening and closing statements by Badeaux’s counsel, (4) the jury’s verdict was not supported by law or evidence, and (5) the findings on loss of wages were not based on the evidence.
Wausau’s policy was in effect from February 1, 1983, to February 1, 1984. An endorsement dated April 27, 1983, established UM limits for commercial vehicles of $5,000.00/$10,000.00 and for private passenger cars, pick-up trucks, and vans of $500,000.00. Dillon Schickli, Mid-South’s vice-president, executed on September 9, 1983, a waiver of the $500,000.00 in UM coverage; and he selected a limit of $50,-000.00 for all Mid-South vehicles, raising limits on some and lowering them on others. Wausau received the waiver on September 30, 1983, but, because of a clerical oversight, did not issue an endorsement to the policy reflecting this change until December 17, 1985. Both Wausau and Mid-South testified that a $50,000.00 limit was intended.
Wausau argues that this waiver deprives Badeaux of no vested rights, since his accident occurred after the waiver was signed. Badeaux contends that the amount of coverage was a factual issue which was properly resolved by the trier of fact.
The burden of proving the selection of lower UM limits is on the insurer. Demolle v. Horace Mann Ins. Co., 491 So.2d 695 (La.App. 5th Cir.1986). We believe that Wausau has proved by a preponderance of evidence that Mid-South selected the lower limits, and a factual finding to the contrary is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Insurance Code in effect at the time of these events, prior to its 1987 amendments, required only that a rejection of higher UM limits be in writing.
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, is not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
La.R.S. 22:1406D(1)(a) (Emphasis added.) There was no requirement that such rejection be attached to the policy; that the insurer act on the rejection by issuing an endorsement; or that, prior to the 1987 amendments, the rejection be on any special form.
The Second Circuit has considered a similar issue in the case of Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App.1986). The policy was issued on April 1, 1982; a rejection of UM coverage was signed July 23, 1982; and the accident occurred on October 17, 1982. The plaintiff *727 argued that the insurer was required to endorse the policy to delete UM coverage even “where the insured later rejected the coverage in writing as the statute contemplates.”
Plaintiff concedes that the written rejection of UM coverage is all that is required by the statute, but argues that the written rejection is ineffective because Hartford did not do what its policy requires, that is, endorse the policy. The policy provision upon which plaintiff relies states:
[The terms of this policy] may not be changed or waived except by endorsement issued by [the insurer].[1]
UM coverage is a creation of the statute, not of the policy. The statute contemplates a rejection or selection of lower limits by the insured and does not contemplate any action or approval of the insurer. The policy provision, tracking Section 628, requires the insurer, and not the insured, to effect, by endorsement, a change or waiver in the terms of the policy. To reach the result that plaintiff would have us reach we would have to insert the underlined words in the policy provision:
The terms of this policy and of any coverage afforded the insured at any time by any statute that is applicable to this policy may not be changed or waived except by endorsement issued by the insurer.
We interpret the phrase the terms [of this policy], to mean the written terms of the policy. The terms of the policy do not provide UM coverage and the later rejection of UM coverage by the insured did not change, waive, or delete a single word of the policy. The statute (Section 1406) does not envision a change, a waiver, or a deletion of the policy as the privilege of the insurer, but provides that the insured alone may reject, or select lower limits of, that which is statutorily provided him.
The law of the statute imposes the UM coverage notwithstanding the policy language, the intent of the parties, or the presence or absence of a premium charge or payment.... The law of the statute provides a means by which the insured, unilaterally and without approval of the insurer, may elect to either reject or select lower limits of the statutory UM coverage. That election may occur after the policy becomes effective but the insured’s election operates only prospectively. The law of the policy provides that the insurer, and not the insured, must endorse the policy to change or effect a waiver of any of the written terms of the policy. LRS 22:1406 is a special statute to which the endorsement requirement of Section 628 does not ap-ply_ Similarly, we hold that the endorsement requirement of this policy is not necessary to accomplish the insured’s written rejection of UM coverage in the manner directed by Section 1406.
Alexander v. Allstate Ins. Co., supra at pp. 678 & 679. (Case citations omitted.)[2] The policy under consideration in the Alexander case had no UM provisions, so Alexander may be distinguishable from the case before us. However, there is no evidence in this record of a writing “signed by the named insured or his legal representative” which acts to lower UM to less than liability coverage, as is required by statute. This could mean that there was no valid waiver by Mid South in effect, notwithstanding the original erroneous endorsement. See Giroir v. Theriot, 513 So.2d 1166 (La.1987). If there was no waiver by Mid South, then the case before us is certainly closely analogous to Alexander even if it is not exactly on point. In any event, we approve the Alexander holding. Where there is a conflict between the Insurance Code and a policy provision, the statute must control. Trevino v. Prudential Ins. Co., 504 So.2d 1179 (La.App. 3rd Cir.1987), writ den. 506 So.2d 1230 (La.1987).
*728 Policies issued in Louisiana are considered to contain all provisions required by statute. Webb v. Zurich Insurance Co., 251 La. 558, 205 So.2d 398 (1967). Accordingly, R.S. 22:1406(D) is incorporated into every policy of insurance to which it is applicable, as if it were written in the policy itself. No insurance contract can include any provisions inconsistent with or contradictory to any standard provision used or required to be used by the applicable sections of the Insurance Code. R.S. 22:623_
Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983).
We are aware of the strong public policy in favor of UM coverage, and we are strongly sympathetic to Badeaux as an innocent, injured party. We cannot, however, ignore the provisions of the Insurance Code which outline the procedure for waiving or selecting lower limits of UM coverage. Any other result reached by the trier of fact is clearly wrong.
We hold that the judgment in favor of Ralph Badeaux and against Employers’ Insurance of Wausau[3] should be reduced to $50,000.00, plus interest and all costs of this proceeding. This award is subject to credits in the amount of $10,000.00 previously paid to Badeaux by Cook’s insurer and $50,000.00 previously paid by Wausau to Mid-South in workmen’s compensation. Because of our reduction of the judgment in favor of Badeaux, the damage issue raised by Wausau is now moot. Employers’ Insurance of Wausau must pay all costs of this appeal.
DECREE
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Ralph Badeaux, and against Employers’ Insurance of Wausau in the amount of FIFTY THOUSAND AND NO/100 ($50,000.00), interest, and all costs of this proceeding.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Employers’ Insurance of Wausau be and it is entitled to the following credits:
FIFTY THOUSAND AND NO/100 ($50,-000.00) previously paid to Mid-South Bottling Company; and
TEN THOUSAND AND NO-100 DOLLARS ($10,000.00) previously paid by Durel Cook’s liability insurer.
REVERSED AND RENDERED.
KLIEBERT, J., dissenting with written reasons.

. This policy language is almost identical to Wausau’s.

. See also Tapia v. Ham, 480 So.2d 855, 859 (La.App. 2d Cir.1985), writ den. 484 So.2d 138 (La.1986): "The fact that the rejection letter was sent after the policy took effect is inconsequential in this case. No injured party had accrued any rights prior to the written rejection."

. The judgment was rendered against Durel Cook, but we note from the record that Cook was dismissed from the suit with prejudice following a settlement between Badeaux and Cook’s insurer.