622 So.2d 677 (1993)
Kenneth J. DIBOS
v.
BILL WATSON FORD, INC., and New Hampshire Indemnity Company, Inc.
No. 92-CA-1999.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Rehearings Denied September 15, 1993.
*679 Paula L. Marcello, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, LA, for defendants-appellees.
Harry C. Graham, III, Earl A. Maxwell, New Orleans, LA, for plaintiff-appellant.
Before SCHOTT, C.J., and BARRY, BYRNES, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Plaintiff, Kenneth Dibos, appeals from the trial court's granting of defendant's summary judgment dismissing plaintiff's claims against both Bill Watson Ford and New Hampshire Indemnity Company.
On April 27, 1990 at approximately 1:15 p.m., plaintiff, an employee of Bill Watson Ford, was involved in an automobile accident while driving a car owned and insured by Bill Watson. The driver of the other automobile did not stop and his identity is unknown. On the morning of the accident, at about 11:30 a.m., Bill Watson Jr., the president of the company, allegedly signed a waiver of uninsured/underinsured motorist ("UM") coverage in front of two witnesses.
Plaintiff filed suit against his employer and its insurer. Defendants filed a motion for summary judgment based upon the fact that the president of the company employing the plaintiff appropriately signed the rejection of UM coverage as required by LSA-R.S. 22:1406(D)(1). At the summary judgment hearing, the defendants introduced the deposition testimony of Bill Watson Jr., one of the witnesses to the signing, and a representative of the insurer, as well as an affidavit from the company's insurance agent. The testimony and the affidavit showed that Bill Watson had refused UM coverage for several years, and that Bill Watson Jr. signed a rejection for UM coverage on April 27, 1990 at about 11:30 a.m. Based on this evidence and arguments from counsel, the trial judge granted defendants' motion for summary judgment on February 10, 1992. Plaintiff now appeals from this ruling, claiming that, as a matter of law, the rejection of UM coverage could not be considered effective until the day after the signing of such rejection.
Louisiana law, as well as judicial interpretation of public policy strongly favoring UM coverage, is unambiguous and unyielding with respect to UM coverage. The law regarding such coverage is so strong that typical contractual concepts, which exist and are usually applied to insurance contracts, are not considered in determining whether the insurance policy contained UM coverage. Under LSA-R.S. 22:1406(D)(1)(a), UM coverage is automatic. Whether the parties intended for such coverage does not matter. Public policy demands and LSA-R.S. 22:1406(D)(1)(a) dictates that UM coverage up to policy's limit, even if nowhere mentioned in the policy, be read into every insurance contract as if it were written on the face of the policy. Ruiz v. Lewis, 579 So.2d 1203, 1205 (La. App. 4th Cir.1991); Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2d Cir. 1986); see also Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). In order for there not to be UM coverage, "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection." Roger v. Estate of Moulton, 513 So.2d 1126, 1132 (La.1987). If the rejection of UM coverage is ambiguous, it is ineffective, regardless of the parties' intent. If the rejection is unambiguous, but not in proper form, it is ineffective.
The burden of proving that rejection of UM coverage was executed, in proper form, without ambiguity, by the proper person, or anything else regarding the effectiveness of such a rejection lies on the party seeking to enforce the rejection and escape UM liability. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La.1991). Proof of the rejection and its *680 effectiveness shall be heavily scrutinized by courts in accordance with the strong public policy to encourage UM coverage as noted by our Supreme Court, and as is inherent in the legislative language of Louisiana statutory provisions. Henson, supra at 538; Roger, supra at 1132.
In this case, Bill Watson Ford and its insurer presented evidence to prove that a waiver of UM coverage was executed in proper form, by the proper person, and became effective before the accident of the plaintiff. This evidence should have been carefully scrutinized by the trial court, as we will proceed to do on our review.
Additionally, because the evidence presented by defendants' was presented for the trial court's consideration of defendants' motion for summary judgment, the evidence should have been closely scrutinized to determine whether the defendants met their heightened burden of proof required for a summary judgment.
We believe the following reasoning from the Second Circuit in Watson v. Cook, 427 So.2d 1312, 1315 (La.App. 2d 1983) appropriately defines the considerations before a trial court in determining whether to grant a summary judgment.
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Thornhill v. Black, Sivals & Bryson, Inc., 394 So.2d 1189 (La.1981); Urban Management Corp. v. Ellis L. Burns, Jr., et al., 427 So.2d 1310 (La.App. 2d Cir.1983); La. C.C.P. Art. 966. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La.App. 1st Cir.1981). To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corp. v. Vaughn, supra. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981). No summary judgment will be granted even if the trial court has grave doubts regarding a party's ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir.1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.1974). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. See Jefferson Parish School Bd. v. Rowley Company, Inc., 305 So.2d 658 (La.App. 4th Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir.1970). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Ellis L. Burns, Jr., et al., supra; Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir. 1976). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, *681 263 So.2d 56 (La.App. 4th Cir.1972); Hemphill v. Strain, supra.
Watson at 1315-1316.
After reviewing the record, we find that the trial court was in error for granting the summary judgment for several reasons.
Defendants, Bill Watson Ford and its insurer, presented the deposition testimony of Bill Watson, Jr., the president of the company, Joe Nelson, the comptroller of the company, and Shelly Schmid, a representative of New Hampshire Indemnity Company to the trial court for its consideration of defendants' motion for summary judgment. Also submitted as evidence was an affidavit from Rowland Staltzer, an insurance agent located in Metairie, Louisiana. This evidence was introduced to prove that Bill Watson, Jr., as an authorized agent of Bill Watson Ford, properly executed a waiver of UM coverage at 11:30 a.m. on the morning of April 27, 1990, just two hours before plaintiff's accident.
Plaintiff, in a memorandum opposing the motion for summary judgment, argued that the credibility of the deposed witnesses and the insurance agent were questionable as each witness was subject to bias and possessed a motive in demonstrating that a UM rejection form had been signed shortly before the accident. We believe that this argument, in a situation such as the present one where the rejection form was by a truly remarkable, even miraculous coincidence, signed just two hours before the accident, has merit. While the plaintiff presented no evidence to support his claim, we emphasize that he is under no burden to do so at this early stage of the proceedings. The entire burden lies on the defendant moving for the summary judgment. In the present case, as argued by the plaintiff, the credibility of the witnesses was at issue. The trial court therefore made a credibility determination in finding that the rejection form for UM coverage was signed before the accident. Such credibility determinations have no place when deciding whether to grant a summary judgment. See Watson, supra at 1315. For this reason alone, the summary judgment should be reversed.
Our second reason for reversing the summary judgment addresses the issue of when a rejection of UM coverage becomes effective.
Our review of the rejection form signed by Bill Watson, Jr. indicates that the waiver of UM coverage was in proper form, was signed by a person with the proper authority, and was unambiguous, thereby complying with the statutory requirements of LSA-R.S. 22:1406(D)(1)(a). In fact, the plaintiff never claimed that the waiver was not in proper form. However, in addition to proving that the rejection of UM coverage was properly executed, we believe that the insurer also bears the burden of proving when such a rejection became effective.
The plaintiff argues on appeal that the waiver of UM coverage did not become effective until the day after the form was signed. Plaintiff cites to La.C.C. art. 1784, as well as cases which state that parts of days may not be used in determining when an obligation became due. See La.C.C. art. 1784; Lowe v. O'Meara, 482 F.2d 1373 (5th Cir.1973); McIntire v. Carpenter, 202 So.2d 297 (La.App. 4th Cir.1967). With this argument we disagree.
Neither the Civil Code article, nor the cases cited by the appellant, are applicable to the present case. Both cases cited by appellant deal with statutory time limits, within which a certain act may be performed.[1] In both cases, the court decided that the entire last day of such statutory periods must be counted, regardless of whether the parties had agreed differently. In the present case, there are no statutory time limits which apply to waiving of UM coverage. While Louisiana law requires a certain procedure and form for rejecting UM coverage, the statute does not provide *682 any time limits within which such rejection must occur. In fact, our understanding of LSA-R.S. 22:1406(D)(1)(a) allows the insured to execute a waiver of UM coverage at any time before or after the insurance policy coverage begins.
We also do not believe that La.C.C. art. 1784 applies to this case. That article states:
When the term for performance of an obligation is not marked by a specific date but is rather a period of time, the term begins to run on the day after the contract is made, or on the day after the occurrence of the event that marks the beginning of the term, and it includes the last day of the period.
The rejection form signed by Bill Watson, Jr. in this case specifies April 27, 1990 as the date he rejected UM coverage. Insurance policies are contracts. Fruge v. First Continental Life and Acc. Ins. Co., 430 So.2d 1072 (La.App. 4th Cir.1983). Under LSA-R.S. 22:1406(D)(1)(a), UM coverage is automatically part of such contracts. However, the insured always has the option to refuse UM coverage for the life of the policy. Such rejection of UM coverage therefore is perfected and becomes effective once the insurer receives the proper waiver form which conforms with the statutory requirements of LSA-R.S. 22:1406(D)(1)(a). Aguillard's Enterprises Inc. v. Smith, 439 So.2d 1158 (La.App. 4th Cir.1983), writ den., 444 So.2d 1235 (La. 1984).
Given the strong public policy and the unambiguous legislative intent favoring UM coverage, we hold that there are issues of material fact concerning the delivery of the proper rejection form to the agent. Our review of the record indicates that New Hampshire Indemnity Co. did not receive the document waiving UM coverage until May 3, 1990.[2]Badeaux v. Cook, 537 So.2d 725 (La.App. 5th 1988) writ granted, 538 So.2d 603 (La.1989) dismissed; and Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2nd Cir.1986) are inapposite. Although we agree that the unilateral act of the insured is sufficient to waive UM coverage, nothing in those cases dispenses with the necessity that the waiver be delivered to the insurance company. Delivery to the agent is normally sufficient.
While we believe that delivery to the agent meets that requirement and the ability of the agent to bind the insurer lies at the very foundation of insurance law, in the instant case there are credibility issues to be decided at a trial on the merits. Additionally, the affidavits submitted by the agent lack the requisite clarity of whether the agent had the actual authority to receive the waiver of UM coverage, or to remove such coverage from the policy. While such authority may exist, without proof, we cannot conclude that there was in fact delivery before the accident which occurred two (2) hours later.
We find that the defendants have not met their burden of proof required for a summary judgment.
For these reasons, the Summary Judgment dismissing plaintiff's claims against the defendants is reversed, and this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
BARRY, J., concurs with reasons.
SCHOTT, C.J., and LANDRIEU, JJ., dissent.
BARRY, J., concurs with reasons.
In support of their motion for summary judgment, Bill Watson Ford, Inc. and New *683 Hampshire Indemnity Company, Inc. attached excerpts from depositions of Bill Watson, Jr., President of the company, and Joe Nelson, Comptroller. Also attached was the affidavit of Rowland Stalter, the insurance agent employed by Rosenthal Agency which handles insurance policies for Bill Watson Ford.
Nelson stated that on April 27, 1990 Stalter brought the UM waiver form to him at Bill Watson Ford. Nelson took the form to Watson's office for him to sign the waiver before he left at noon for his customary exercise program. According to Nelson, Stalter was not in Watson's office when the form was signed. Nelson did not recall that Stalter was in the room; he did concede that Stalter might have seen Watson sign the waiver through the glass window between offices. Watson testified that he signed the waiver April 27, 1990 before noon. According to Watson, Nelson and Stalter were present when he signed.
The motion for summary judgment relies heavily on Stalter's affidavit. Stalter declared that on April 27, 1991 (at 11:30 a.m.) he met with Watson and Nelson at the dealership to have the waiver executed. Stalter stated he witnessed Watson sign the waiver at approximately 11:30 a.m. on April 27, 1991 after which the document was forwarded to New Hampshire Indemnity Company, Inc.
Discrepancies in the documents are obvious. The year 1991 was used more than once instead of 1990 in Stalter's affidavit. The statements differ as to who was in Watson's office and saw him sign the UM waiver. The discrepancies place at issue the credibility of Stalter, Nelson, and Watson.
In opposition to the summary judgment motion, Dibos argued that the affidavits of Watson, Nelson and Stalter were self-serving. Dibos attached his affidavit which declared that he was involved in a hit and run automobile accident at approximately 1:15 p.m. on April 27, 1990. He called his employer, Bill Watson Ford, at approximately 1:30 p.m. to report the accident to Steve Schenck. According to Dibos he informed the company about the hit and run accident (which would trigger UM coverage). Apparently Dibos was not told that the UM waiver had been signed less than two hours before his accident. He does not mention the waiver in his affidavit.
Credibility is crucial. There are discrepancies as to the year Stalter witnessed the signing of the UM waiver and as to whether he was present. There remain genuine issues of material fact as to whether Stalter brought the UM waiver to Bill Watson Ford on April 27, 1990. Whether Stalter was in Watson's office to witness the signing of the waiver is also an issue of material fact.
Appellate courts review summary judgments de novo and use the same criteria applied by the trial court to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991).
Summary judgment was improperly granted.
SCHOTT, Chief Judge, dissenting:
The majority opinion turns on the holding that the insurer must be in possession of the rejection form executed by the insured in order for a UM waiver to be perfected. No authority is cited for this proposition.
I do not subscribe to this view. The statute clearly permits the insured to make a unilateral rejection of UM coverage without the consent or acknowledgment of the insurer. This was said in Badeaux v. Cook, 537 So.2d 725 (La.App. 5th 1988), writ granted, 538 So.2d 603 (La.1989), dismissed; Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2nd Cir.1986). This court is not bound to follow these decisions, but in my view they represent the sounder view and should be followed.
The circumstances of this case militate in favor of appellee's position. There is an affidavit by Rowland Stalter, the insurance agent who handled Bill Watson's account, in which he swears that the president of Bill Watson signed the waiver of UM coverage in his presence at 11:30 a.m. on April 27. From that time there was no UM *684 coverage in force. To hold that this waiver would not become effective until some point in time when the insurer took action is contrary to the law.
I would affirm the judgment of the trial court dismissing plaintiff's suit.
LANDRIEU, Judge, dissenting.
I would affirm the judgment of the trial court which dismissed the plaintiff's lawsuit on a motion for summary judgment.
It is undisputed that, prior to the plaintiff's accident in a vehicle owned by Bill Watson Ford, Inc. and insured under a fleet insurance policy by New Hampshire Indemnity Company, Inc., Bill Watson, Jr., the president of the company, signed the required UM waiver, which was delivered to the insurance agent. Since plaintiff's rights did not accrue prior to the written rejection of UM coverage, his claim should be dismissed in a summary proceeding.
NOTES
[1] McIntire involves the prescription for filing an opposition to a candidacy for a public office. McIntire v. Carpenter, supra; Lowe deals with the statutory amount of time that an insurance company must give its insured before it terminates an insurance contract and its coverage. Lowe v. O'Meara, supra.
[2] The deposition testimony of Shelly Schmid on page 34 states:

Q: The next document which I'm going to label as Schmid No. 8 appears to be the Louisiana uninsured motorists waiver which was signed on April 27th, 1990, is that correct?
A. Yes.
Q. And you said you received this on May 3rd, 1990?
A. Yes.
Q. And it was signed on that date?
A. Yes.
Q. Did you complete the bottom part of this?
A. No, somebody else. Someone in our office did.