683 So.2d 689 (1996)
Floyd F. DEGRUISE, et al.
v.
HOUMA COURIER NEWSPAPER CORPORATION, et al.
Nos. 95-C-1863, 95-C-2675.
Supreme Court of Louisiana.
November 25, 1996.
Rehearing Denied December 13, 1996.
*690 Robert R. McBride, McBride, Foret, Rozas & Leonard, New Orleans, for Applicant in No. 95-C-11863.
Michael J. Samanie, Kentley Robert Fairchild, Herbert William Barnes, Jr., William Peter Golden, Jr., Samanie, Barnes & Allen, Houma, for Respondent in No. 95-C-1863.
James Edward Diaz, Jr., Onebane, Donohoe Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for Applicant in No. 95-C-2675.
Michael J. Samanie, Kentley Robert Fairchild, Herbert William Barnes, Jr., Samanie, Barnes & Allen, William Peter Golden, Jr., Accardo, Edrington & Golden, Houma, for Respondent in No. 95-C-2675.
VICTORY, Justice.[*]
We granted certiorari in these cases to examine three issues: first, whether the jury erred in awarding future general damages without reducing them for the probable *691 shortened life expectancy of the plaintiff; and second, whether the trial court erred in awarding plaintiffs penalties and attorney fees under LSA-R.S. 22:658; and third, whether the appellate court erred in holding that the intervenor compensation carrier was obligated to pay a share of the attorney fees and costs incurred by plaintiffs under LSA-R.S. 23:1102 and 1103 even though the intervenor compensation carrier and the defendant-UM carrier were the same entity.

FACTS AND PROCEDURAL HISTORY
On December 18, 1990, plaintiff-appellee, Floyd F. Degruise ("Degruise"), was injured in a traffic accident while stopped at a traffic light at the intersection of Louisiana Highway 660 and U.S. 90 in Houma, Louisiana. The vehicle operated by Degruise was owned by his employer, South Louisiana Electric Cooperative Association ("SLECA"), and Degruise was in the course and scope of his employment at the time of the accident.
Degruise and his wife, Della, individually and on behalf of their two minor children, filed a petition for damages in the Thirty-Second Judicial District Court for the Parish of Terrebonne, naming as defendants, SLECA, Federated Rural Electric Insurance Corporation ("Federated"), the uninsured/underinsured (UM) insurer of SLECA, and others no longer parties to this suit.
On December 13, 1991, SLECA and Federated, who was also SLECA's worker's compensation insurer, intervened seeking reimbursement for all worker's compensation benefits paid to or on behalf of Degruise. SLECA and Federated later amended the petition of intervention to allege that the payment of any "UM benefits would be subject to the subrogated claim of Federated as the worker's compensation carrier." By judgment dated February 25, 1993, the trial court severed the intervention from the principal demand upon motion in limine by plaintiffs who asserted that the intervenor's participation at trial would be highly prejudicial to plaintiffs.
The trial court sustained motions for summary judgment filed by plaintiffs, finding that there was no valid selection by SLECA of lower UM coverage limits or lower umbrella coverage limits and that the Federated polices provided UM coverage limits of $1,000,000.00 on the date of the accident, equal to the limits provided on the liability coverage, and umbrella coverage limits $10,000,000.
Federated, as the worker's compensation carrier, paid worker's compensation benefits of $40,809.45 and medical benefits of $18,093.14 for a total of $58,902.59 through June 16, 1994. Federated moved for a judgment on the pleadings asserting that, because Federated was both the UM and worker's compensation carrier, a credit should be recognized in favor of the UM carrier in the amount of compensation benefits previously paid. This motion was denied by the trial court.
At trial, evidence was presented that the automobile accident caused an aggravation of plaintiff's preexisting epileptic condition. However, after the accident, in June of 1992, Degruise was diagnosed as having colon-rectal cancer. The tumor was surgically removed in August of 1992. In February of 1994, Degruise was diagnosed as having liver cancer and that tumor was surgically removed in April of 1994. The medical testimony established that both cancers had been completely removed but that Degruise only had a 30-40% chance of surviving five years as a result of the cancers.
Plaintiffs' rehabilitation expert, Nathaniel Fentress, testified Degruise would incur future medical expenses of $189,643.90 based on a life expectancy of 27.5 years. Plaintiffs' economic expert, Roy Womack, calculated past lost earnings to be $84,907 and future earnings lost, based on a work life expectancy of 12.52 years and a life expectancy of 26.44 years, were calculated to be $517,466.
The trial court instructed the jury to consider its award of future damages for a permanent or partial disability "on the basis of the life expectancy or work life expectancy of the plaintiff." Regarding loss of future earning capacity, the trial court instructed the jury to include such sums "that the plaintiff is reasonably certain to suffer in the future." In determining this amount, the jury was instructed to "consider what the plaintiff's *692 health, physical ability and earning powers were before this accident, [and] what they are now...."
After a jury trial on the merits, the jury rendered a verdict as follows:

1) What award, if any, do you give Floyd Degruise for
the following:
a) Past and present medical expenses: $ 22,000
b) Future medical expenses: $ 190,000
c) Past, present and future physical and
 mental pain and suffering: $ 290,000
d) Past, present and future economic
 loss and/or earning capacity $ 600,000
e) Permanent/Partial disability $ 100,000
 TOTAL $1,202,000

2) What award, if any, do you award to Della Degruise, Trent Degruise, and Trevor Degruise for their loss of consortium?

 Della Degruise $ 75,000
 Trevor Degruise $ 25,000
 Trent Degruise $ 25,000

Thereafter, the trial court rendered judgment in accordance with the jury's findings, together with legal interest from the date of judicial demand until paid. The trial court also awarded Degruise the sum of $240,000 in penalties and attorney fees pursuant to LSA-R.S. 22:658 from judgment until paid. Della Degruise was awarded penalties and attorney fees in the amount of $15,000 and Trevor and Trent Degruise were each awarded penalties and attorneys' fees in the amount of $5,000, all under LSA-R.S. 22:658.[1]
Federated appealed the judgment of the trial court, including the trial court's earlier grant of plaintiffs' motion for summary judgment on the policy limits of the UM and umbrella coverage, and the First Circuit Court of Appeals affirmed. Degruise v. Houma Courier Newspaper Corporation, et al., 94-2386 (La.App. 1st Cir. 6/23/95), 657 So.2d 580.
On August 15, 1994, Degruise filed a motion for attorney fees and expenses under LSA-R.S. 23:1102, 1103 and Moody v. Arabie, 498 So.2d 1081 (La.1986), requesting that Federated, as intervenor and worker' compensation carrier, be held liable for a proportionate share of the costs, including attorney fees, incurred by him in his action against Federated, as the UM insurer. The trial court denied that motion and in oral reasons stated:
I'm inclined not to award the attorneys' fees against the intervenor for two reasons. I know Diaz did do some work on the case and (2) I think Federated has paid your attorney fees once already, because I gave you all attorney fees in connection with the arbitrary and capricious on the UM. And even though they, I guess, worked two hats in this proceeding, one as intervenor and one as UM carrier, I suspect that it all comes out of the same pocket somewhere along the line. It just doesn't seem fair to me that they should pay twice, plus they're paying handsomely for the damages in connection with Mr. Degruise's claim. Like I said, they're paying arbitrary and capricious damages and attorneys' fees already. I just have a hard time in my mind justifying giving them, or giving to plaintiffs' counsel, another award of attorneys' fees because they also intervened as the workmens compensation carrier.
Plaintiffs appealed this ruling. The First Circuit Court of Appeal reversed the trial court and remanded the case for a determination of the amount of attorneys' fees and costs to which Degruise was entitled under LSA-R.S. 23:1103. Degruise v. Houma Courier Newspaper Corporation, et al., 95-0013 (La.App. 1st Cir. 10/6/95), ___ So.2d ___.
Federated applied for two separate writs to this Court, which this Court granted. Degruise v. Houma Courier Newspaper Corp., 95-1863 (La.11/13/95), 662 So.2d 456; 95-2675 (La.12/15/95), 667 So.2d 521. We consolidated the cases.

*693 DISCUSSION

Future Damages
At trial, all doctors who testified agreed that plaintiff had a 30-40% chance of surviving five years as a result of his colon-rectal and liver cancers. Conversely, there was a 60-70% chance that he would die within five years as a result of the cancers. The jury heard this evidence and was instructed that they should take Degruise's condition at the time of trial into account and award future damages that he was "reasonably certain to sustain." However, it is evident, upon comparing expert testimony on future damages with the amount actually awarded, that the jury based their awards on expert testimony which assumed a normal life expectancy. The appellate court affirmed based on a finding that "[a]lthough the majority of the patients who are diagnosed with colon-rectal and liver cancer do not survive more than five years, the medical experts could not testify with a reasonable degree of medical certainty that Degruise would not live more than five years." 657 So.2d at 592. Further, the appellate court held that "Federated could not be held liable for the damages resulting from the cancers which were not related to the automobile accident, nor can their liability be diminished because Degruise subsequently developed a cancer which may diminish his life expectancy." Id.
The trial court was correct in instructing the jury to consider Degruise's health at the time of trial in awarding future damages. Louisiana jurisprudence is clear that events after an accident that affect a plaintiff's life span can and should be taken into account in determining future damages. See Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475, 478 (1906) (holding that where the plaintiff died before trial from causes unrelated to the accident sued upon, the substituted plaintiff could not use mortality tables to show the decedent's life expectancy because the calculation of damages could not extend beyond the date of death); Smith v. Millers Mutual Ins. Co., 419 So.2d 59, 63 (La.App. 2nd Cir.), writ denied, 422 So.2d 155 (La.1982) (taking into account the plaintiff's poor physical condition at the time of trial and awarding damages that were substantially less than they would have been had the court calculated damages based strictly on life expectancy tables); Simon v. Smith, 470 So.2d 941 (La.App. 3d Cir.), writs denied, 476 So.2d 353, 355 (La.1985) (holding that the trial court had abused its discretion in awarding the plaintiff future medical expenses using life expectancy tables where the medical testimony showed that at the time of trial, the plaintiff suffered from several serious conditions unrelated to the defendant's negligence); Dark v. Brinkman, 136 So.2d 463, 469 (La.App. 3d Cir.1962) (holding that the award for personal injury must be based upon the evidence available to the trial court, including the life expectancy of the injured person); Oswalt v. Louisiana DOTD, 93-850 (La.App. 3d Cir. 3/30/94), 640 So.2d 388, writ denied, 94-1106 (La.6/24/94), 641 So.2d 207 (holding that the trial court had abused its discretion in refusing to reopen the case to consider the effect that plaintiff's unexpected death after the trial would have on the award of future damages).
However, considering that the jury's future damage awards for medical expenses and loss of earning capacity are exactly the same as plaintiffs' expert testimony which computed such damages based on a normal life expectancy, it is clear that the jury verdict did not take into account the unanimous medical testimony that, at the time of trial, Degruise had, at most, a 40% chance of surviving for that amount of time. This constitutes error which the court of appeal failed to correct.
Further, the appellate court erred in requiring, in effect, that in order to show Degruise's reduced life expectancy because of the cancers, the defendant had to prove with a "reasonable degree of medical certainty that the plaintiff would not live more than five years." 657 So.2d at 593. The plaintiff has the burden of proving his case, not the defendant. "In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault...." Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151, 155 (1971). "[P]roof by direct or circumstantial evidence *694 is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." Id.; see also Lasha v. Olin Corp., 625 So.2d 1002 (La.1993) (where the lower court incorrectly held the plaintiff to the standard of proving his case by a "reasonable degree of medical certainty"). This standard is also applicable to future damages, such as future medical expenses. Doucet v. Doug Ashy Building Materials Inc., 95-1159 (La.App. 3d Cir. 4/3/96), 671 So.2d 1148, 1152 (citing Veazey v. State Farm Mutual Automobile Ins. Co., 587 So.2d 5 (La.App. 3d Cir.1991) and others). In this case, the evidence clearly showed that Degruise only had a 30-40% chance of a normal life expectancy. Since the plaintiffs did not prove that it was "more probable than not" that Degruise would sustain the future damages awarded for a period of 26.44-27.5 years, the jury awards for future damages must be reduced.
Defendant argues that future damages must be based, at most, on a five year life expectancy. We agree. Although the unrebutted medical testimony established that Degruise only had a 30-40% chance of living five years, the testimony also established that if he survived five years, he could then expect to live a normal life expectancy. With this in mind, the five year period for future damages is a reasonable approach supported by the evidence.
The jury relied on plaintiffs' experts' testimony in rendering their awards for future medicals and lost earning capacity, which awards were based on a full life expectancy. The testimony of plaintiffs' economic experts also established that past and present medical expenses were $22,000 and future medical expenses for a five year period would be $41,942.85, and that loss of past, present and future earnings would be $298,019.00. Those are the amounts Degruise is awarded for those elements of damages.
The awards for pain and suffering, permanent/partial disability and loss of consortium are more problematic. However, we have arrived at the highest amounts the jury could have reasonably awarded by using a 27 year life expectancy[3] and adding 3 years and 7 months, the approximate time between the injury and the jury verdict in this case, to reach a total of 367 months as the total time period for which the awards for pain and suffering, permanent/partial disability and loss of consortium were granted. Plaintiffs should receive these awards for the 43 months from injury to jury verdict, and for the 60 months subsequent to the trial. Accordingly, we calculate the following awards to be the highest amounts the jury could have reasonably awarded: $81,370.00 for pain and suffering; $28,067.50 for permanent/partial disability; $21,012.00 for Mrs. Degruise's loss of consortium; and $7,004.00 each for Trevor and Trent Degruise's loss of consortium.

Penalties and Attorney Fees under LSA-R.S. 22:658
Federated argues that the trial and appellate courts erred in finding that Federated was arbitrary and capricious and therefore liable for penalties and attorney fees under LSA-R.S. 22:658. However, this assignment of error did not prompt our writ grant in this case. Nevertheless, we have reviewed the record on this issue and find that the trial and appellate courts were not manifestly erroneous in finding that Federated was arbitrary and capricious.
Because the penalties awarded under LSA-R.S. 22:658 were 10% of the damages awarded as provided by statute, we must reduce the amount of penalties. Further, because the trial judge awarded plaintiffs 10% of the damages for reasonable attorney fees under LSA-R.S. 22:658, we also reduce the amount of attorney fees. The penalties awarded to Degruise are reduced to $47,139.93, which is 10% of the general damages awarded to Degruise. The attorney fee award is reduced to $47,139.93, which brings the total award due Degruise under LSA-R.S. 22:658 to $94,279.87. Della Degruise's penalty award is reduced to $2,101.20 and her attorney fee award is reduced to $2,101.20, which brings the total award due Della Degruise under LSA-R.S. 22:658 to *695 $4,202.40. Trent and Trevor's penalty awards are reduced to $700.40 each, and their attorney fee awards are reduced to $700.40 each, which bring the total awards due Trent and Trevor under LSA-R.S. 22:658 to $1,400.80 each.

Attorney Fees under LSA-R.S. 23:1103
The last issue for consideration is whether the appellate court erred in ordering Federated, as worker's compensation carrier, to pay a portion of the attorney fees incurred by plaintiff in its suit against Federated, as the UM carrier, under LSA-R.S. 23:1103.
LSA-R.S. 23:1103, which became effective on January 1, 1990, provides, in pertinent part, as follows:
A. (1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent;....C
C. If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for reasonable legal fees and costs incurred by the attorney retained by the plaintiff. Such reasonable legal fees shall not exceed one third of the intervenor's recovery for pre-judgment payments or pre-judgment damages. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to post-judgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Paragraph A of this Section.
This section was a codification of the doctrine enunciated by this Court in Moody v. Arabie, supra, wherein we held that the plaintiff and the intervenor compensation insurer were co-owners of the right to recover damages from the third party and that the co-owners were obligated to bear their proportionate share of the reasonable attorney fees, according to their interests in the recovery. 498 So.2d at 1085.
The appellate court held that, for the purposes of the application of this rule, "[i]t is of no moment that, through mere coincidence, Federated was the worker's compensation insurer as well as the insurer." 95-0013, ___ So.2d at ___. The appellate court found that because Federated, as the UM carrier, was legally liable to pay an employee damages because of his injury and was not included in the list of persons excluded from the category of "third persons" under LSA-R.S. 23:1032, that Federated, as worker's compensation carrier, was entitled to be reimbursed for its compensation outlay from such "third person." Id. However, as worker's compensation carrier, Federated was also liable for attorney fees incurred by plaintiffs in bringing suit against Federated, as UM carrier. Id. This holding is erroneous.
The facts of this case are similar to a case recently decided by this Court. In Hebert v. Jeffrey, 95-1851 (La.4/8/96), 671 So.2d 904, the plaintiff sued his co-employee and his employer's liability insurer in tort. The plaintiff's employer, self-insured for worker's compensation, simultaneously paid worker's compensation to its injured employee and automobile liability premiums to the liability insurer. The employer intervened in the suit seeking to recover the worker's compensation benefits it had paid to the plaintiff. The trial court rendered a judgment in favor of the employer but deducted a 25% attorney fee under Moody. The appellate court reversed and awarded the compensation paid without a deduction for attorney fees. We affirmed the appellate court's ruling because unlike Moody, the employer and plaintiff in Hebert were adversaries asserting adverse legal positions and because the employer, "self-insured for worker's compensation, voluntarily paid the compensation that the law encourages it to pay, and simultaneously, though payment of automobile liability insurance premiums, provided the very insurance pot which has facilitated plaintiff's recovery of full tort damages." 671 So.2d at 908.
Likewise, for the same reasons expressed in Hebert, we refuse to extend the Moody *696 doctrine to force a worker's compensation carrier to pay a portion of plaintiffs' legal fees under LSA-R.S. 23:1103 where the worker's compensation carrier and UM carrier are the same and the UM carrier is the only viable defendant in the case. That Federated and plaintiffs were adversaries is evident by the actions taken by Federated, as worker's compensation carrier, in joining Federated's, as UM carrier, motions for summary judgment on the limits of the UM and umbrella policies, and the fact that the trial judge severed Federated's intervention from the plaintiffs' main demand upon plaintiffs' motion. More importantly, Federated provided the funds from which plaintiffs were seeking general damages. Therefore, the appellate court's ruling is reversed and Federated is not required to pay a portion of the plaintiffs' attorney fees under LSA-R.S. 23:1103.[4]

DECREE
For the reasons stated herein, we affirm the judgment of the trial court in favor of plaintiffs and against Federated and amend the amount of general damages awarded by the jury by awarding $471,399.35 to Degruise, $21,012.00 to Della Degruise, and $7,004.00 each to Trent and Trevor Degruise. The judgment of the court of appeal awarding penalties and attorney fees under LSA-R.S. 22:658 is affirmed and amended as follows: Degruise is awarded $94,279.87, Della Degruise is awarded $4,202.40 and Trent and Trevor are awarded $1,400.80 each. The judgment of the court of appeal awarding attorney fees and costs under LSA-R.S. 23:1103 is reversed.
AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART.
WATSON, J., concurs in part and dissents in part with reasons.
LEMMON, J., concurs in part and assigns reasons.
LEMMON, Justice, concurring.
I agree that the lower courts erred in awarding damages based on a normal life expectancy when the unanimous medical evidence established that plaintiff did not have a normal life expectancy.
The effect of a less-than-normal life expectancy on the totality of the evidence of damages normally should be left to the fact finder, who should be free to award an amount of damages that is generally supported by the approximate number of years of life and work life expectancy under the evidence in the particular case and the discounted present value of the future damages provided in the expert testimony.
Attorney's fees under La.Rev.Stat. 23:1103 should be denied because Federated's recovery, as worker's compensation insurer, against itself, as uninsured motorist carrier, was zero. The attorney did not accomplish a benefit either for his client, who had already received the compensation payments, or for Federated, whose subrogated claim against itself was extinguished by confusion.
WATSON, Justice, concurring in part and dissenting in part:
I concur as to the reduction for future earnings and future medicals but, as the majority opinion recognizes, the reduction for pain and suffering and disability is not at all certain. Therefore, I dissent from reducing those damages by the same percentage used to calculate future damages.
I respectfully concur in part and dissent in part.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] Federated, as worker's compensation carrier, and SLECA filed a motion for a new trial, which was granted by the trial court, amending the trial court judgment and rendering judgment on the intervention in favor of Federated, as worker's compensation carrier for SLECA, and against plaintiffs and Federated, as the UM insurer, for the stipulated sum of $58,902.59 to be satisfied out of the $1,202,000 judgment rendered in favor of Degruise on the main demand. The amended judgment also decreed that Federated, as the worker's compensation carrier, and SLECA were entitled to a credit of $1,202,000, less attorneys' fees and costs, against future compensation and medical benefits.
[3] The range of normal life expectancy was between 27.5 years and 26.4 years.
[4] Having made this determination, it is unnecessary to address Federated's assignment of error that the Court of Appeal erred in failing to declare a simple off-set of compensation payments as against UM liability.