772 So.2d 704 (2000)
Yvette C. THIGPEN and Jeffrey Thigpen
v.
RPM PIZZA, INC. d/b/a Domino's Pizza, Inc., et al.
No. 99 CA 1146.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
Rehearing Denied December 12, 2000.
*705 Ernest M. Forbes, Denham Springs, for Plaintiffs-Appellants Yvette Thigpen and Jeffrey Thigpen.
George J. Nalley, Jr., Dona J. Dew, Metairie, for Defendants-Appellees RPM Pizza, Inc. and Evanston Insurance Company.
Before: FOIL, WHIPPLE, FOGG, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
Appellant, Yvette Thigpen, appeals the trial court's grant of summary judgment in favor of appellee, Evanston Insurance Company, dismissing this lawsuit with prejudice. We reverse and remand.

FACTS AND PROCEDURAL HISTORY
On October 26, 1995, appellant was a guest passenger in a car driven by Deborah Chenevert. Ms. Chenevert was proceeding in a northerly direction on Jones Creek Road when her vehicle collided with another vehicle driven by Lashaunda Stevenson, who ran a stop sign at the intersection of Tigerbend and Jones Creek Roads. Both appellant and Ms. Chenevert were in the course and scope of their employment with Domino's Pizza at time of the accident.
Appellant filed a petition for damages on January 31, 1996, naming, among others, RPM Pizza, Inc. d/b/a Domino's Pizza, Inc. ("Domino's"), and Domino's insurer, appellee, as defendants. Appellant alleged that appellee, as Domino's uninsured/underinsured motorist (UM) carrier, was responsible for her damages to the extent Ms. Stevenson was uninsured or underinsured. In their answer, Domino's and appellee averred that the policy of insurance (the "Evanston policy"), issued to Domino's by appellee, did not provide UM coverage for the accident in question.
On December 14, 1998, Domino's and appellee filed a motion for summary judgment. In their memorandum in support of the motion, Domino's and appellee argued that Domino's had specifically rejected UM coverage for all non-owned vehicles. A copy of the Evanston policy and the rejection form were attached to the memorandum. Appellant opposed the motion, asserting that the UM rejection form signed by a Domino's representative was invalid.
A hearing on the motion was held on February 22, 1999, and judgment granting the motion was rendered. A written judgment dismissing the suit against appellee *706 with prejudice was signed on March 8, 1999.[1] This appeal followed.

ASSIGNMENT OF ERROR
On appeal, appellant argues that the trial court erred in finding that the UM rejection form signed by Domino's was a valid rejection of UM coverage, thereby entitling appellee to a dismissal.

DISCUSSION

Summary JudgmentStandard of Review
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, XX-XXXX-XX (La.2/13/98), 709 So.2d 753, 754. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Rambo v. Walker, 96-2538, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

UM Rejection
This court, in Degruise v. Houma Courier Newspaper Corporation, 94-2386 (La. App. 1st Cir.6/23/95), 657 So.2d 580, aff'd as amended, 95-1863 (La.11/25/96), 683 So.2d 689, thoroughly articulated the law governing UM coverage in Louisiana and the purpose of the law as follows:
Louisiana law, as well as judicial interpretation of public policy strongly favoring UM coverage, is unambiguous and unyielding with respect to UM coverage. The law regarding such coverage is so strong that typical contractual concepts, which exist and are usually applied to insurance contracts, are not considered in determining whether the insurance policy contained UM coverage. Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 679 (La.App. 4th Cir.1993).
UM coverage is determined not only by contractual provisions, but also by the applicable statutes. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La. 1987). In Louisiana, UM coverage is *707 provided for in LSA-R.S. 22:1406. This statute embodies a strong public policy and is to be liberally construed such that statutory exceptions to the UM coverage requirements are interpreted strictly. Giroir v. Theriot, 513 So.2d 1166, 1167 (La.1987); Roger v. Estate of Moulton, 513 So.2d at 1130; Holbrook v. Holliday, 93-1639, p. 4 (La.App. 3rd Cir.6/1/94), 640 So.2d 804, 807, writ denied, 94-1735 (La.10/7/94), 644 So.2d 642; Faucheaux v. Boston Old Colony Insurance Company, 93-384 (La.App. 5th Cir.3/16/94), 633 So.2d 959, 963, writ granted in part and denied in part, 94-1296 (La.9/30/94), 642 So.2d 858.
The object of the UM statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La. 1992); Henson v. Safeco Insurance Companies, 585 So.2d 534, 537 (La. 1991); Giroir v. Theriot, 513 So.2d at 1167; Roger v. Estate of Moulton, 513 So.2d at 1130; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963. In other words, the clear purpose of the UM statute is to promote the recovery of damages for innocent victims of automobile accidents when the tortfeasor is either uninsured or underinsured. Holbrook v. Holliday, 640 So.2d at 807. This purpose is accomplished by making UM coverage available for the victim's benefit as primary protection against the tortfeasor not adequately insured. Holbrook v. Holliday, 640 So.2d at 807.
Under LSA-R.S. 22:1406 D(1)(a), UM coverage is automatic. Whether the parties intended such coverage does not matter. Public policy demands and LSA-R.S. 22:1406 D(1)(a) dictates that UM coverage up to the policy's limit, even if nowhere mentioned in the policy, be read into every insurance contract as if it were written on the face of the policy. Henson v. Safeco Insurance Companies, 585 So.2d at 537; Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679. As a result, every automobile liability policy delivered or issued for delivery in this state is impliedly amended to include UM coverage, unless coverage is validly rejected. Giroir v. Theriot, 513 So.2d at 1167; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963. UM coverage may be specifically rejected by the insured in the insurance contract, pursuant to statutory guidelines. However, any exception to the mandatory UM coverage is to be strictly construed. Tugwell v. State Farm Ins. Co., 609 So.2d at 197; Henson v. Safeco Insurance Companies, 585 So.2d at 537; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963.
Degruise, 94-2386 at 8-9, 657 So.2d at 586.
In 1987, La. R.S. 22:1406(D)(1)(a) was amended to clearly and explicitly state the method required to reject or select lower limits of UM coverage. Specifically, La. R.S. 22:1406(D)(1)(a)(ii)[2] was added and provided as follows:
After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
*708 It is settled that the form used by an insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). The Louisiana Supreme Court has also recognized that a "meaningful selection" can be made when only two options are given, i.e., (1) UM coverage equal to bodily injury limits in the policy, or (2) no UM coverage, but only if the policy provides the minimum coverage allowed by law in a so-called "10/20 policy." See, e.g., Soileau v. Patterson Insurance Group, Inc., 97-1910 (La.10/31/97), 703 So.2d 4 (reversing this court for reasons stated in Chief Judge Lottinger's dissent in Soileau v. Patterson Insurance Group, Inc., 96-0017 (La.App. 1st Cir.6/20/97), 697 So.2d 44); Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213.
The method of rejecting and/or selecting UM coverage used in the Evanston policy does not conform to the requirements of La. R.S. 22:1406(D)(1)(a)(ii). Because this is not a 10/20 policy, the insured was required to be informed of and make a meaningful selection from the three options provided in the statute. In the present case, the Declarations page of the Evanston policy indicates that a UM endorsement is attached. The endorsement contains the following paragraph:
Uninsured motorists insurance provides protection for bodily injuries caused by a negligent motorist who has no insurance. Underinsured motorists coverage provides protection if that motorist has insurance with insufficient limits to pay for injuries caused. This policy will provide uninsured/underinsured coverage at a limit equal to the policy's bodily injury limit. You may reject coverage or select a lower limit by completing the proper selection space below.
Below the paragraph is the following sentence preceded by a blank: "I reject all Uninsured/Underinsured Coverage for non-owned and hired autos." The blank has been checked, and the form is signed and dated by a representative of Domino's.
While the form advises the insured of his options under the law, the form is deficient in two respects. First, although the form states that UM coverage will be provided, it fails to inform the insured that UM coverage is statutorily required unless specifically rejected by the insured. See, e.g., Trahan v. Prudential Property & Casualty Insurance Company, 97-2470, p. 6 (La.App. 1st Cir.5/14/99), 739 So.2d 811, 815; Kinchen v. Bridges, 97-2069, pp. 4-5 (La.App. 1st Cir.9/25/98), 724 So.2d 780, 781, writ denied, 98-2683 (La.12/18/98), 732 So.2d 1239. Therefore, the insured did not have all the necessary information that the statute requires in order to make a "meaningful selection."
Second, the rejection form only provided a space for the insured to reject coverage completely. There was no space provided in which the insured could choose limits lower than the liability coverage. A rejection on a form that prohibits the insured from choosing limits below liability coverage when the policy is not a 10/20 policy, does not meet the statutory requirements because it forecloses options available to the insured by law. Tugwell, 609 So.2d at 198. For these reasons, we must find that the rejection of UM coverage is invalid.

CONCLUSION
Accordingly, the trial court's granting Evanston Insurance Company's motion for summary judgment is reversed. This case is remanded to the trial court for further proceedings. Costs are assessed to appellee, Evanston Insurance Company.
REVERSED AND REMANDED.
FOIL, J., dissents and assigns reasons.
*709 FOIL, Judge, dissenting.
The purpose of the law dealing with rejection is to place the insured in a position to make an informed and meaningful rejection of uninsured motorist coverage if the insured wishes to do so. The legislature has determined that an insured has the option to elect not to have to pay for uninsured motorist coverage. The legislature is the branch of government responsible for making the law. That law has not been held unconstitutional. Accordingly, the courts should enforce it.
This case is not one where an insured purchased a policy and later claims that he or she was misled in such a way that there was no informed and meaningful rejection of uninsured motorist coverage. On the contrary, in this case, there was an agreement by an owner of a business with an insurance company, along with the help and advice of an experienced broker. Everyone involved in the obtaining of the policy knew precisely what was happening. It is unrealistic to conclude that there was no informed and meaningful rejection.
I strongly, but respectfully, dissent, and would affirm the trial court.
NOTES
[1] Domino's was dismissed with prejudice pursuant to an unopposed motion for summary judgment by Domino's.

Additionally, we note that although the judgment is captioned as a "Judgment of Partial Dismissal," we believe the judgment is a final judgment pursuant to La. C.C.P. art. 1915(A)(1). Furthermore, even if the judgment does not meet the requirements of La. C.C.P. art. 1915(A)(1), the trial court designated the judgment as final in accordance with La. C.C.P. art. 1915(B)(1).
[2] La. R.S. 22:1406(D)(1)(a) has since been amended by Acts 1997, No. 1476, § 3 and Acts 1999, No. 732, § 1.