680 So.2d 1358 (1996)
Laurie H. CANGELOSI, et al.
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 96 CA 0159.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*1359 Stacey Moak, Baton Rouge, for Laurie H. Cangelosi, et al.
Daniel R. Atkinson, Jr., Atkinson & Atkinson, Baton Rouge, for Allstate Insurance Company.
Before CARTER, PARRO and McDONALD,[1] JJ.
PARRO, Judge.
Laurie H. Cangelosi, individually and on behalf of her two minor children, Tracy Ayn and Anthony Michael Cangelosi ("plaintiffs"), appeals a judgment in favor of her automobile liability insurer, Allstate Insurance Company ("Allstate"). The trial court dismissed plaintiffs' claim for additional benefits based on the death of their husband and father, Michael W. Cangelosi ("Mr. Cangelosi"), as a result of the negligence of an underinsured motorist. The trial court found the insured had validly selected $10,000 for uninsured motorist coverage and limited plaintiffs' recovery to that amount. We affirm.

FACTS
Mr. and Mrs. Cangelosi had an automobile liability policy with Allstate covering three vehicles with stated liability limits of $100,000/300,000 and uninsured motorist limits of $10,000/20,000. In October 1993, the policy was amended to add coverage for Tracy Ayn and a fourth vehicle. On October 21, 1993, Mr. Cangelosi executed an Allstate "Selection/Rejection Form," checking certain boxes to make his selections, initialing alongside these boxes, signing and dating the form, and returning it to Allstate.[2]
On November 9, 1993, while driving one of the insured vehicles, Mr. Cangelosi was killed when a collision occurred with a vehicle driven by an underinsured motorist. All other claims brought by plaintiffs were resolved and the only issue remaining at trial was the amount of uninsured/underinsured motorist ("UM") insurance available under the Allstate policy. Plaintiffs claimed benefits equal to the bodily injury liability limits of $100,000; Allstate unconditionally tendered them $10,000. The parties stipulated plaintiffs' uncompensated damages exceeded the amount in dispute.
After trial on the merits, judgment was rendered against plaintiffs and in favor of Allstate. In his reasons for judgment, the trial judge stated:
I can't recall making a ruling and hope [sic] that the first circuit overturns me; but today I hope they overturn me. I *1360 have to deny the claim for the U.M. coverage and rule in favor of Allstate. I think it was a sufficient form. It does not technically say disease and death, but it says bodily injury. And I think anybody with a reasonable thought process would consider death to be great bodily injury, supreme bodily injury, but death from bodily injury.... I think Mr. Cangelosi was taking a prudent gamble in an effort to reduce the increased cost of adding a fifteen year old to his family policy.... And I think it was explained to him.
Plaintiffs contend the selection of lower limits was not valid because the form referred only to bodily injury, not death, and because it did not clearly mention underinsured motorist coverage. They claim Mr. Cangelosi was unable to make an informed choice because of these ambiguities. They also argue the trial court erred in considering parol evidence to establish the validity of the selection process.

STANDARD OF REVIEW
The facts are not disputed in this case and therefore the doctrine of manifest error does not apply to this court's review of the trial court's decision. Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698, 701 (La.App. 1st Cir.), writ denied, 629 So.2d 1138 (La. 1993). Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235,1238 (La.App. 1st Cir.1990).

ANALYSIS
The issue before this court is whether the insured made a legally valid selection of UM coverage limits lower than the bodily injury coverage limits in his policy.
Louisiana law requires UM coverage in every automobile liability insurance policy for an amount not less than the limits of bodily injury liability provided by the policy. This minimum amount is automatically included in the policy unless the insured rejects the coverage or selects lower limits. LSA-R.S. 22:1406(D)(1)(a)(i); Banks v. Patterson Ins. Co., 94-1176, p. 3 (La.App. 1st Cir. 9/14/95), 664 So.2d 127, 129, writ denied, 95-2951 (La.2/16/96), 667 So.2d 1052. The purpose of the UM statute is to promote the recovery of damages for innocent victims of automobile accidents when the tortfeasor is either uninsured or underinsured. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Holbrook v. Holliday, 93-1639, p. 3-4 (La.App. 3rd Cir. 6/1/94), 640 So.2d 804, 807, writ denied, 94-1735 (La.10/7/94), 644 So.2d 642. Louisiana law and judicial interpretation of public policy strongly favor UM coverage. Accordingly, any waiver of UM coverage must be clear and unmistakable. Washington v. Savoie, 92-2957, p. 5 (La.4/11/94), 634 So.2d 1176, 1179. If rejection or selection of lower limits is ambiguous, it is ineffective, regardless of the parties' intent. Even if the rejection or selection of lower limits is unambiguous, if it is not in proper form, it is ineffective. Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 679 (La. App. 4th Cir.), writ denied, 629 So.2d 1178 (La.1993).
The insured may accept UM coverage equal to the limits of bodily injury liability, may select lower limits of UM coverage, or may reject it entirely. Tugwell v. State Farm Ins. Co., 609 So.2d at 197. The insurer bears the burden of proving an insured named in the policy rejected in writing UM coverage equal to bodily injury coverage or selected lower limits. Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La. 1991). The selection or rejection of UM coverage must be made on a form supplied by the insurer and must be signed by the named insured or his legal representative. LSA-R.S. 22:1406(D)(1)(a)(ii); Daigle v. Authement, 95-1465, p. 3 (La.App. 1st Cir. 5/31/96), 676 So.2d 650, 652. The form used to make a selection or rejection must give the insured a meaningful selection of his statutory options. Tugwell v. State Farm Ins. Co., 609 So.2d at 197. The insurer may make the insured aware of his options by designing the form in such a way, through the use of blanks and boxes, that it is apparent to a reasonable person that he has the option of selecting any lower limit he chooses. Id. at 199. To effect a valid rejection of UM coverage, the insured or his authorized representative must expressly set forth in a single *1361 document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A less precise writing is insufficient to effect a valid rejection. Roger v. Estate of Moulton, 513 So.2d 1126, 1132 (La. 1987). The appellate courts require extreme clarity in these types of forms. Anderson v. Allstate Ins. Co., 93-1102, p. 7 (La.App. 1st Cir. 4/8/94), 642 So.2d 208, 215, writ denied, 94-2400 (La.11/29/94), 646 So.2d 404.
The Allstate selection/rejection form signed by Mr. Cangelosi is quite detailed. An introductory paragraph explains:
Uninsured Motorists Insurance for Bodily Injury pays those damages which you and other persons insured by your policy are legally entitled to recover for bodily injury from the owner or operator of an uninsured or underinsured motor vehicle. Unless you reject it or select lower limits, Uninsured Motorists Insurance for Bodily Injury will be included in your policy at limits equal to your Bodily Injury Liability Insurance (Coverage AA) limits..... To reject Uninsured Motorists Insurance for Bodily Injury or select lower limits, you must check the appropriate box(es) below and initial your choice.
Three options are described, each with a box to be checked and a line for initials alongside. The first option allows the insured to accept UM coverage equal to the limits of his policy's bodily injury liability insurance limits. The second option allows the insured to reject the equal coverage and to select instead lower limits of UM coverage. A long list of amounts is shown below this option, each with a box to check and a line to initial. The optional limits range from "$10,000 each person/$20,000 each accident" to "$2,000,000 each person/$2,000,000 each accident," and the "each person" and "each accident" terminology is explained. The third option allows the insured to totally reject UM coverage for bodily injury. A concluding paragraph states:
Uninsured Motorists Insurance for Bodily Injury has been explained to me and I have read this form carefully and completely. I understand that the choice I have made here is effective immediately and will apply to all future renewals, reinstatements, or substitute policies unless I notify Allstate in writing.
Directly beneath this paragraph is a line for the insured's name, a signature line, a line for the policy/application number, and a line for the date.
The Allstate agent testified only the policy number had been entered before the selection/rejection form was sent to Mr. Cangelosi; presumably all other marks on the form were his because his initials matched other documents in the Allstate file. The completed form shows he checked and initialed the second option to select lower limits. Beneath that option he checked and initialed the limits of $10,000 each person/$20,000 each accident. At the bottom of the form, he printed his name on one line, signed his name on another line, and dated the form "10/21/93." His wife testified the signature appeared to be his.
We conclude the form used by Allstate meets the requirements of Tugwell and Roger. The form explains the coverage available and allows a selection from all three options noted in Tugwell. It is signed and dated by the insured, contains the applicable policy number, and states clearly in the concluding paragraph that the choice made on the form is effective immediately, thus satisfying the criteria of Roger.
Plaintiffs argue, however, because the language of the form refers solely and consistently to "Uninsured Motorists Insurance for Bodily Injury," and does not state the choices apply also to coverage for sickness, disease, or death, the document was ambiguous and did not fully inform the insured of the types of coverage affected by his selection.
The record contains a certified copy of the Allstate policy at issue. The basic policy provision for automobile liability insurance states:
Allstate will pay for all damages an insured person is legally obligated to pay because of bodily injury or property damage meaning: (1) bodily injury, sickness, disease or death to any person....
*1362 The basic policy provision for UM coverage states:
We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto.....
The section defining limits of liability contains similar language.
Attached to the policy is an undated endorsement adding a definition to the automobile liability insurance portion of the policy, which states:
"Bodily Injury"means bodily injury, sickness, disease or death.
Throughout the rest of the endorsement, the term "bodily injury" appears in bold type, along with other defined terms of the policy. In this same endorsement, an amendment to the UM portion of the policy replaces the basic policy provision quoted above with the following:
We will pay those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
a. bodily injury sustained by an insured person.
This endorsement was already in effect as part of the policy when the selection/rejection form was completed by Mr. Cangelosi.
The form provided by Allstate for the selection or rejection of UM coverage is consistent with the definition used throughout the policy and endorsement and is not ambiguous. Where a policy of insurance contains a definition of any word or phrase, this definition is controlling. Oncale v. Aetna Cas. & Sur. Co., 417 So.2d 471 (La.App. 1st Cir. 1982). This court will not impose upon insurers the obligation to redefine a term each time it is used or to repeat all the other terms included within it. Such an imposition would confuse, rather than clarify, the policy language.
Moreover, even if this court ignores the language in the policy and endorsements, and scrutinizes only the wording on the form in isolation, we conclude it is legally sufficient for the reason stated by the trial judge, namely, that death is the supreme bodily injury. A reasonable person would understand his UM choices covered death, as well as some lesser degree of injury. Thus we conclude the use of the term "bodily injury" in the form, without redefining that term to state it also included death, was sufficient to inform Mr. Cangelosi of the coverage affected by his selections.
Plaintiffs' argument concerning the omission of the term "underinsured motorist" in the bold print on the form is also without merit. This term is included in the first paragraph of the form and it was not necessary to repeat it every time the form mentioned uninsured motorist coverage.
We also find no merit in plaintiffs' argument that the trial court erred in allowing parol evidence to clarify the intent of the insured. The testimony from the agent did not address the insured's intent, but addressed the process of sending the selection/rejection form, the agent's explanations to Mr. Cangelosi, and Mr. Cangelosi's abilities as a business person to make an informed decision. Mr. Cangelosi's intent is clearly evidenced upon the selection/rejection form.

CONCLUSION
We conclude the trial court did not err in finding the Allstate selection/rejection form was legally sufficient and the insured made an informed choice of the lower limits of UM coverage. Accordingly, the judgment is affirmed.
AFFIRMED.
*1363 
NOTES
[1] Judge J. Michael McDonald of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A copy of the executed form is attached as Appendix A.