808 So.2d 519 (2001)
Randall A. DARDAR and Samantha Saltzman Dardar
v.
Ronald L.E. YORK, Kathy D. York, Liberty Mutual Insurance Company, ABC Insurance Company, XYZ Insurance Company, and First Guardian Insurance Company.
No. 2000 CA 0339.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
Brian J. Marceaux, Houma, Counsel for Plaintiff/Appellee Randall A. Dardar and Samantha Saltzman Dardar.
*520 Philip McMahon, Carl Conrad, Houma, Counsel for Defendant/Appellant Liberty Mutual Insurance Company.
Kenneth Charbonnet, Metairie, Counsel for Appellant/Defendant Liberty Mutual-Workers' Compensation.
Before: CARTER, C.J., FOIL, and WEIMER, JJ.
WEIMER, J.
In this appeal, the defendant insurer challenges the trial court's ruling in favor of the plaintiffs, holding a rejection of uninsured motorist coverage invalid. We affirm.

FACTS
This litigation stems from an automobile accident that occurred on October 18, 1997. Plaintiffs, Randall A. Dardar and Samantha Saltzman (now Samantha Dardar), were employed by Dynasty as oilfield hotshot drivers. Randall Dardar was driving a Chevrolet truck leased to his employer, Dynasty Transportation, Inc., by its owner, Donna S. Burkhart. The Dardars were returning from making a delivery of oilfield supplies to a customer when the accident occurred. It is undisputed that they were acting in the course and scope of their employment.
Randall Dardar was driving north on La. Hwy. 23, a four-lane highway with a center median, in Plaquemines Parish. Defendant, Ronald L.E. York, was driving a pickup truck owned by his mother, Kathy D. York. He left a convenience store on the south side of Carroll Street, crossed the southbound lanes of Hwy. 23, crossed the median and entered the northbound lane directly in front of Dardar.
Plaintiffs filed suit to recover for their injuries against Ronald and Kathy York. Because the Yorks were uninsured, plaintiffs also sued Liberty Mutual Fire Insurance Company as the provider of uninsured motorist coverage under a trucker's liability policy issued to Dynasty. Plaintiffs subsequently filed a motion for summary judgment on the issue of UM coverage, asserting that the Liberty Mutual rejection form signed by James H. Glasgow, president of Dynasty Transportation, Inc., was invalid. Liberty Mutual filed its own motion for summary judgment, urging that Glasgow validly rejected UM coverage for his employees because they were covered by a policy of workers' compensation insurance for injuries sustained while operating leased vehicles.
Following a hearing on the motions, the trial court denied Liberty Mutual's motion for summary judgment and granted plaintiffs' motion. The court held that the UM rejection form was invalid and, therefore, the policy provided plaintiffs with UM coverage in the amount of $500,000. After a subsequent trial of the matter, the court again held that the UM rejection form was invalid and rendered judgment on October 22, 1999, awarding damages to plaintiffs. Liberty Mutual appealed assigning one issue for review. Liberty Mutual alleges it was error for the trial court to find that the uninsured motorist rejection was invalid.
Finding no error in the trial court judgment, we affirm.

DISCUSSION
Louisiana law provides that uninsured motorist coverage shall be provided in all automobile liability insurance policies issued in this state in the same amount as the bodily injury liability coverage unless the insured or his authorized representative expressly rejects the coverage or selects lower limits than the bodily injury liability provided in the policy. LSA-R.S. *521 22:1406(D)(1)(a)(i).[1] The statute provides that uninsured motorist coverage in an amount equal to the liability limits is automatic unless such coverage is completely rejected or lower limits are selected. An insured must be provided with three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits (but not less than the lowest limit permitted by statute for bodily injury coverage), or no UM coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992).
The object of the uninsured motorist legislation is to promote full recovery for innocent automobile accident victims. The courts have held that the statute is to be liberally construed in favor of providing uninsured motorist coverage and that a rejection of the coverage provided by law must be clear and unmistakable. The insurer bears the burden of proof that a rejection has been legally perfected. A valid rejection must be expressly set forth in writing and signed by the insured or his authorized representative. Daigle v. Authement, 96-1662, p. 3 (La.4/8/97), 691 So.2d 1213, 1214.
A valid rejection form must inform the applicant of available options regarding UM coverage so that the applicant may make a "meaningful selection" from among the options provided by statute. Tugwell, 609 So.2d at 197.
Generally, affidavits and other extrinsic evidence are not permitted to reform an otherwise defective rejection form. See Anderson v. Allstate Insurance Company, 93-1102, p. 7 (La.App. 1 Cir. 4/8/94), 642 So.2d 208, 215 (on rehearing), writ denied, 94-2400 (11/29/94), 646 So.2d 404; see also Washington v. Savoie, 92-2957, pp. 4-6 (La.4/11/94), 634 So.2d 1176, 1179-1180. The first inquiry is whether the form itself is valid on its face. In order to be a valid rejection form, it must inform the insured of the protection provided and of the available options. Tugwell, 609 So.2d at 197. By operation of law, uninsured motorist coverage in an amount equivalent to the bodily injury liability coverage is written into every policy. LSA-R.S. 22:1406(D)(1)(a)(i). The insured then has the option of either rejecting such coverage, or if his bodily injury coverage is greater than the minimum amount, selecting an amount equal to the lowest amount allowed or an amount between that and the amount of his bodily injury coverage. Daigle, 96-1662 at 4-5, 691 So.2d at 1215.
At the time Mr. Glasgow obtained the trucker's insurance policy in this case, LSA-R.S. 22:1406 provided that UM coverage in an amount equal to the liability limits was automatic unless such coverage was completely rejected or lower limits were selected on a form to be designed by each insurer.[2]
In support of its motion for summary judgment, Liberty Mutual submitted the affidavit of Dynasty's president, James Glasgow, who signed the rejection form at issue. Mr. Glasgow attested that he understood both the language and content of the UM rejection form and the nature of *522 the coverage options at the time he signed the form. He stated that he willingly and knowingly made the decision to reject such coverage with the further understanding that only vehicles owned by Dynasty would have UM coverage. Mr. Glasgow stated that Dynasty owns no vehicles, but leases all vehicles used by it under a standard form lease. Under the terms of that lease, Dynasty's employees are authorized to drive the leased vehicles only in the course and scope of their employment. As such, they are covered by Dynasty's workers' compensation insurance policy. Mr. Glasgow attested that this was one of the reasons he rejected UM coverage.
After a careful review of the documents submitted by Liberty Mutual in support of the claim that the insured rejected uninsured motorist coverage, we conclude that the trial judge was correct in ruling that the rejection form does not meet the requirements of Tugwell and its progeny.
Liberty Mutual is correct in concluding that there is no requirement that the uninsured motorist selection form be contained on one page. However, review of the two sheets submitted by Liberty Mutual in support of the rejection involved in this matter seriously calls into question whether these two sheets are actually parts of the same form. Review of the insurance policy indicates all other endorsements, as well as the policy of insurance itself, are on numbered pages. Single sheets do not contain numbers, but sequential sheets are numbered 1 of 3, 2 of 3, 3 of 3, etc. Neither of the purported rejection sheets is numbered.
The information contained on the first sheet is not in the same type or format as the information included on the second sheet. The first sheet explains that uninsured motorist coverage is included unless rejected or lower limits are selected. There are two boxes provided for the insured to check whether to select uninsured motorist coverage equal to the bodily injury coverage "or" to select a limit from the chart of available limits. There is no transitional language from the first sheet to indicate a second sheet is to follow. The first sheet contains no identifying information regarding the name of the insured or the policy number.
The second sheet bears a heading whereas the first does not. The sheet is entitled, "UNINSURED/UNDERINSURED MOTORIST COVERAGE REJECTION FORM." Following the heading and the blocks containing policy-identifying information, the sheet begins: "This letter is evidence that uninsured/underinsured motorist coverage has been explained to me. I have the right to reject this coverage and have made the following choice." (Emphasis added.) The form goes on to include two boxesone to reject uninsured motorist coverage and the other to reject uninsured motorist property damage coverage. Following that are a signature line and a date line.
The second sheet contains no information regarding available options other than rejection. It is definitely not a continuation of the previous page, but appears to be an independent letter of rejection.
Additionally, review of Mr. Glasgow's affidavit reveals that he does not clearly indicate the document he signed consisted of two pages. There is no evidence to establish that the pages were part of one form.
We believe the trial judge was correct in his determination the form was inadequate to reject uninsured motorist coverage. While there is no doubt that Mr. Glasgow had the authority of the corporation to reject uninsured motorist coverage on behalf of the corporation, and that it was his intent to do so, the form which he signed *523 did not meet the criteria of Tugwell and its progeny. Lacking a valid rejection of uninsured motorist coverage, uninsured motorist coverage is provided. Regardless of the intent of the parties, a writing which is less than precise is insufficient to effect a valid rejection. See Melton v. Miley, 98-1437 pp. 5-6 (La.App. 1 Cir 9/24/99), 754 So.2d 1088, 1091, writ denied, 99-3089 (1/7/2000), 752 So.2d 867, quoting Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987).

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Liberty Mutual is cast with the costs of this appeal.
AFFIRMED.
FOIL, J., dissents and assigns reasons.
FOIL, J., dissenting.
I respectfully dissent.
This is a case where a business entity, Dynasty Transportation, Inc., rejected uninsured motorist coverage because it is covered by a policy of workers' compensation. This was a business owner of a large trucking business. Can it be said that the business owner did not have the opportunity to make an informal and meaningful decision to reject? It is difficult to believe that the answer could be "yes".

DISCUSSION
In Louisiana, the issuance of UM insurance is governed by La. R.S. 22:1406. At the time Mr. Glasgow obtained the trucker's insurance policy in this case, that statute provided that UM coverage in an amount equal to the liability limits is automatic unless such coverage is completely rejected or lower limits are selected on a form to be designed by each insurer.[2] The jurisprudence subsequently established that an insurer must place the insured in a position to make an informed rejection of uninsured motorist coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). In this respect, the insurance form must give the applicant the opportunity to make a "meaningful selection" from the options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Id. The insurer bears the burden of proving a valid rejection of UM coverage. Id.
In support of its motion for summary judgment, Liberty Mutual submitted the affidavit of Dynasty's president, James Glasgow, who signed the rejection form at issue. Mr. Glasgow attested that he understood both the language and content of the UM rejection form and the nature of the coverage options at the time he signed the form. He stated that he willingly and knowingly made the decision to reject such coverage with the further understanding that only vehicles owned by Dynasty would have UM coverage. Mr. Glasgow stated that Dynasty owns no vehicles, but leases all vehicles used by it under a standard form lease. Under the terms of that lease, Dynasty's employees are authorized to drive the leased vehicles only in the course and scope of their employment. As such, they are covered by Dynasty's workers' compensation insurance policy. Mr. Glasgow attested that this was one of the reasons he rejected UM coverage.
After studying the rejection form at issue here, I disagree with the trial court's conclusion that it does not comply with Tugwell and its progeny. To the contrary, the rejection form provided by Liberty Mutual that was signed by Mr. Glasgow and dated August 27, 1997, conformed to *524 the statutory and jurisprudential requirements. It informed the insured that UM coverage would be provided by law in amounts not less than the limits of bodily injury liability unless the insured rejects such coverage or selects a lower limit. It further provided spaces for the insured to select between the three available options. It is of no moment that the form consists of two pages. Because of the magnitude of the bodily injury coverage provided in the policy, the section outlining the various options of selecting lower limits exceeded the space available on the first page. It was of no moment that the policy number is not listed on the rejection form itself. The form clearly identifies the named insured and bears the same effective date as the policy at issue. Finally, there is absolutely no evidence in this record to suggest that Mr. Glasgow did not make an informed and meaningful rejection of UM coverage. In fact, the trial court agreed that Mr. Glasgow "knew what he was doing [and] wanted to reject the coverage." As such, the purpose of the law dealing with this subject was satisfied. I would therefore find the rejection of UM coverage was valid and Liberty Mutual was entitled to judgment in its favor dismissing plaintiffs' claims against it.
NOTES
[1] We note the legislature amended the uninsured motorist provision by Acts 1997, No. 1476 § 3, with an effective date of September 6, 1998, to add an additional economic-only coverage. That provision was not in effect at the time this uninsured motorist selection was made. For the purposes of this opinion, all references to LSA-R.S. 22:1406(D)(1)(a)(i) are to the statute as it read at the time of the alleged rejection of uninsured motorist coverage.
[2] LSA-R.S. 22:1406 was revised by 1997 La. Acts No. 1476 (effective September 6, 1998) to require that insurers use the form prescribed by the commissioner of insurance.
[2] La. R.S. 22:1406 was revised by 1997 La. Acts No. 1476 (effective September 6, 1998) to require that insurers use the form prescribed by the commissioner of insurance.