868 So.2d 64 (2003)
Ashli RICHARDSON, Karl M. Beattie, and Bobbie G. O'Bryan, Jr.
v.
Bobby Gerald LOTT, Jr., Bobby Gerald Lott, Sr., State Farm Mutual Automobile Insurance Company, and Terrebonne Parish Consolidated Government.
No. 2003 CA 0189.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
Writ Denied February 13, 2004.
*66 William P. Crews, Jr., Natchitoches, William S. Watkins, Duval, Funderburk, Sundbery, Lovell & Watkins, Houma, for Plaintiff-Appellant Ashli Richardson.
Kevin D. Thompson, E. James Gaidry, Jr., Houma, for Defendant-Intervenor-Appellee Terrebonne Parish Consolidated Government.
Howard B. Kaplan, Bernard, Cassisa, Elliott & Davis, Metairie, for Defendant-Appellee United States Fidelity & Guaranty Insurance Company.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
Ashli Richardson appeals a judgment granting a motion for summary judgment filed by United States Fidelity & Guaranty Insurance Company (USF & G) and dismissing her claims for uninsured/underinsured motorist (UM) insurance coverage under policies issued to the Terrebonne Parish Consolidated Government (the parish). The only issue on appeal is whether UM rejections executed by the parish were valid. After a de novo review, we find that USF & G failed to carry its burden of proof that there is no genuine issue of material fact concerning the validity of the UM rejections in this case. Accordingly, we reverse and remand.

*67 FACTUAL AND PROCEDURAL BACKGROUND
Ashli Richardson, Karl M. Beattie, and Bobbie G. O'Bryan, Jr., who were all police officers for the city of Houma, were involved in an automobile accident on November 24, 1998, while in the course and scope of their employment. They were occupying a police vehicle and were proceeding through an intersection under a green light when they were hit by a pickup truck driven by Bobby G. Lott, Jr., owned by Bobby G. Lott, Sr., and insured by State Farm Mutual Automobile Insurance Company (State Farm). As a result of the accident, Ms. Richardson was severely injured;[1] Officers Beattie and O'Bryan sustained only minor injuries. All were paid workers' compensation benefits by the parish. Suit was filed against the Lotts and State Farm; the parish was named as a necessary and indispensable party because of its potential subrogation claims for workers' compensation payments,[2] and because the State Farm liability limits might be insufficient to cover those claims and the damages sustained by the three officers, particularly Ms. Richardson. The petition further alleged that the parish might be insured by USF & G, but did not name it as a defendant.
After some discovery, an amended petition added USF & G as a defendant, alleging its liability insurance policies, which were renewed July 1, 1998, insured the parish and that the city of Houma police department was an additional insured on those policies, entitling the officers to UM coverage. The amended petition further stated that there was no rejection of UM coverage when the policies were issued and that UM rejection forms signed in October 1998 were not valid.[3]
USF & G eventually filed a motion for summary judgment, stating there were no genuine issues of material fact and, as a matter of law, the parish having effectively rejected UM coverage, the USF & G policies did not provide UM insurance at the time of this accident. In support of its motion, among other things, USF & G submitted affidavits; copies of its policies; the deposition of Barry P. Bonvillain, parish council president at all relevant times; a copy of a resolution adopted by the parish council on March 11, 1992, authorizing the council president to reject UM coverage on all parish insurance policies; and copies of various UM rejection forms from 1993 to 2001. The documents and accompanying affidavits showed that effective July 1, 1998, USF & G had replaced two existing policies with substitute policies providing liability insurance to the parish and the city of Houma police department. UM rejection forms had been signed in January 1996 on the previous policies. The two policies in effect at the time of the accident were a commercial liability umbrella policy (the umbrella policy) and an excess automobile liability policy *68 (the excess policy). Although UM rejection forms were not executed when these policies became effective in July 1998, they were executed for both policies by Mr. Bonvillain a month before the accident, on October 20, 1998.[4] USF & G argued that the evidence established that the parish had rejected UM coverage on its current policies, each of which was a renewal or substitute for preceding policies on which UM coverage had also been consistently rejected. Therefore, because the previous waivers of UM coverage continued unabated in the renewed or substituted policies and no new UM rejections were needed, and/or because the rejection forms executed in October 1998 were valid, the policies provided no UM coverage for Ms. Richardson.
Ms. Richardson opposed the motion, submitting copies of certain letters from USF & G's and the parish's attorneys with copies of USF & G policies attached; a copy of the 1992 parish council resolution; a copy of the UM rejection form prescribed by the commissioner of insurance as of April 17, 1998; copies of the October 1998 UM rejection forms; and a copy of a UM rejection form executed for the parish on December 14, 1999, using the new form prescribed by the commissioner of insurance. She argued that the 1992 parish council resolution was ambiguous and did not authorize succeeding council presidents and other persons to continue to reject UM coverage indefinitely. She also contended the resolution by its terms applied only to the parish, and not to the city of Houma or its police department. She further urged that the UM rejections executed in October 1998 were not valid, because the forms used were not in accordance with the new format prescribed by the commissioner of insurance for use after September 6, 1998, as required by Louisiana Revised Statute 22:1406(D)(1)(a)(ii). Finally, because for one year, a different insurance company provided the parish's liability insurance coverage, the previously-executed UM rejection forms on the USF & G policies did not remain valid, because the policies had not been continuously renewed by USF & G or its affiliate.
At the hearing on the motion, the trial court commented:
[T]he State's new form that the State requires was not used; is that essential, in this particular case? And the Court is of the opinion, no it is not. Where the form is otherwise in compliance with law, the Court is of the opinion that, that previous UM rejection is sufficient and adequate.
* * *
We have a situation where the Parish has exhibited, in the past, an intention not to have UM coverage.
* * *
Considering the circumstances, the Court is of the opinion that Parish Government sufficiently complied with the requirements of the Uninsured Motorist Law.
The trial court granted the motion for summary judgment in favor of USF & G, signed a judgment on July 30, 2002, and designated it as final.[5] Ms. Richardson appealed.

*69 SUMMARY JUDGMENT
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Collins v. Randall, 02-0209 (La. App. 1st Cir.12/20/02), 836 So.2d 352, 354.
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Johnson v. Allstate Ins. Co., 95-1953 (La.App. 1st Cir.5/10/96), 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. The insurer bears the burden of proving an insured named in the liability policy rejected in writing UM coverage equal to the bodily injury limits contained in the policy or selected lower limits. Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La. 1991); Cangelosi v. Allstate Ins. Co., 96-0159 (La.App. 1st Cir.9/27/96), 680 So.2d 1358, 1360, writ denied, 96-2586 (La.12/13/96), 692 So.2d 375.

DISCUSSION

Validity of 1992 Resolution
The resolution adopted by the parish council on March 11, 1992, stated:
NOW, THEREFORE, BE IT RESOLVED by the Terrebonne Parish Council, on behalf of the Terrebonne Parish Consolidated Government, that, as per the recommendation of the Staff, Parish President Barry Bonvillain be authorized to reject the Uninsured Motorists Coverage Limits on the self-insured retention automobile, excess automobile and umbrella coverage on the Terrebonne Parish Consolidated Government's insurance policies.
Ms. Richardson contends in her first two assignments of error that the 1992 resolution was not valid for the subsequent actions taken on behalf of the parish to reject UM coverage. She claims the resolution is ambiguous, because it authorizes the rejection of only uninsured motorists coverage, and does not mention underinsured motorists coverage. She further argues it is not clear that this resolution continues to authorize rejection of coverage for an indefinite period of time. Finally, she contends the resolution is limited to the parish and does not authorize anyone to act for the city of Houma or its police department.
Regarding the supposed ambiguity, we note that uninsured/underinsured motorists coverage is typically referred to using the shorter phrase, "uninsured motorists coverage," which is understood to encompass both types of coverage. See, e.g., Cangelosi, 680 So.2d at 1362. The terms are virtually inseparable for the purposes *70 of making a rejection of insurance. Even the introductory statement in the applicable statute uses this phrase, stating "[t]he following provisions shall govern the issuance of uninsured motorist coverage in this state...," although the statutory provisions cover both uninsured and underinsured motorist insurance coverage. LSA-R.S. 22:1406(D). Therefore, the use of the phrase "uninsured motorists coverage" in the resolution suffices to cover "underinsured motorists coverage" also.
Considering the continued viability of the resolution, we note that when a time period is not specified or limited in an authorization, the authorization continues indefinitely until changed or terminated at some future time. See LSA-C.C. arts. 2024 and 3025-3028. Nothing in the record indicates that the authorization or the intent of the parish council was ever changed, limited, withdrawn, or terminated. Additionally, the personality of a juridical person is distinct from that of its members. LSA-C.C. art. 24. So a change in the representation on the parish council would not affect the validity of the council's previous decisions. Therefore, the authority given to Mr. Bonvillain in 1992 to revoke UM coverage on policies insuring the parish remained operative until terminated.
With reference to the parish council's authority to make a decision affecting UM coverage for the Houma police department, Mr. Bonvillain testified in his deposition that the Houma police department fell directly within the authority of the parish council and its president. There is no conflicting evidence in the record to suggest that Mr. Bonvillain over-stated the parish council's authority in this regard. Therefore, the authority given by the parish council to reject UM coverage in its insurance policies was sufficient authorization for the rejection of that coverage for the Houma police department, as an additional insured under those policies.
We note further that the Louisiana Supreme Court has stated that a corporate resolution is not necessary for a corporate officer to validly sign a UM rejection form. See Thibodeaux v. Burton, 538 So.2d 1001, 1004 n. 1 (La.1989); Cavalier v. Louisiana Farm Bur. Cas. Ins. Co., 530 So.2d 73 (La.1988)(granted writ and reversed a portion of judgment holding that rejection of UM coverage by a company representative without formal written authority was invalid). The same principle is applicable when a person holding an administrative position in a governmental entity has apparent or delegated authority to execute such a rejection. See Rainey v. Gerarve, 461 So.2d 464, 466 (La.App. 5th Cir.1984), writ denied, 463 So.2d 601 (La.1985); Walker v. Nobile, 606 So.2d 7, 8-9 (La.App. 5th Cir.), writ denied, 607 So.2d 569 (La.1992). We conclude that while a written resolution may not even have been required by law, the 1992 resolution certainly was sufficient to prove that Mr. Bonvillain had authority to execute rejections of UM coverage for the parish.

Validity of October 1998 UM Rejections
In Louisiana, mandatory UM coverage is provided for in LSA-R.S. 22:1406(D). This statute embodies strong public policy and is to be liberally construed in favor of coverage, such that statutory exceptions to the UM coverage requirements are interpreted strictly. Croker v. Reliance Nat'l Indem. Co., 00-0474, 0475, & 0476 (La.App. 1st Cir.5/11/01), 800 So.2d 4, 8. The object of such coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson, 585 So.2d at 537. Louisiana Revised Statute 22:1406(D)(1)(a)(i) requires *71 that UM coverage be provided in every automobile liability insurance policy in amounts not less than the limits of bodily injury liability provided by the policy. See Croker, 800 So.2d at 8; Esteve v. U.S. Agencies Cas. Ins. Co., Inc., 01-1009 (La.App. 1st Cir.5/10/02), 818 So.2d 998, 1001. Statutory coverage will be read into a policy as if it were in the policy itself. Henson, 585 So.2d at 537. However, the statute also provides that the insured may reject that statutorily mandated coverage, select lower limits, or select economic-only coverage.[6]See LSA-R.S. 22:1406(D)(1)(a)(i) and (ii).
If rejection of UM coverage is ambiguous, it is ineffective, regardless of the parties' intent. If the rejection is unambiguous, but not in proper form, it is also ineffective. Therefore, unless the insured's expression of his desire to reject or select lower limits of uninsured motorist coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Dardar v. Prudential Prop. & Cas. Ins. Co., 98-1363 (La.App. 1st Cir.6/25/99), 739 So.2d 330, 333, writ denied, 99-2196 (La.11/12/99), 750 So.2d 195; Weeden v. Landmark American Ins. Co., 99-1939 (La.App. 1st Cir.9/22/00), 768 So.2d 248, 251.
The issues before this court are complicated by the fact that the formal requirements of law changed after the USF & G substitute policies were issued in July 1998, but before the UM rejection forms were executed by Mr. Bonvillain in October 1998. The provisions of Louisiana Revised Statute 22:1406(D) were substantially amended by 1997 La. Acts, No. 1476, § 3 (Act 1476), effective September 6, 1998. Before that amendment, the selection/rejection choices were to be made "only on a form designed by each insurer"; after the effective date of Act 1476, those choices were to be made "only on a form prescribed by the commissioner of insurance." See LSA-R.S. 22:1406(D)(1)(a)(ii)(before and after Act 1476). Act 1476 also added the following sentences to item (D)(1)(a)(ii):
A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. Any form executed prior to the effective date of this Act shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection. (Emphasis added).[7]
Ms. Richardson points out that the policies issued July 1, 1998, did not contain a contemporaneously executed UM rejection form. She contends the UM rejection forms signed by Mr. Bonvillain in October 1998 were not valid because, having been signed after September 6, 1998, their validity depended on using the UM rejection form prescribed by the commissioner of insurance for use after that date, as the statute required; however, the correct *72 form was not used. Ms. Richardson submitted evidence showing that in April 1998, the commissioner of insurance had prescribed a new form with five choices to be selected by the named insured, including two choices dealing with "economic-only" UM coverage. See Hobson v. King, 35,743 (La.App. 2nd Cir.2/27/02), 812 So.2d 776, 778, writ denied, 02-0828 (La.5/24/02), 816 So.2d 851 (court noted that the form in question was promulgated by the Louisiana Commissioner of Insurance on April 28, 1998, in La. Bulletin LIRC 98-01; it attached the form to its opinion as Appendix "A"). The record shows the UM rejection form signed by Mr. Bonvillain in October 1998 had only three choices, none of which referred to "economic-only" UM coverage. Ms. Richardson claims that even if this form might have been legally sufficient before September 6, 1998, it was not sufficient as a rejection of UM coverage after that date.
The validity of a UM rejection form executed after September 6, 1998, on a form other than that prescribed by the commissioner of insurance for use after that date, is a res nova issue for this court.[8] For guidance, we look to Evans v. Crowe, 98-2422 (La.App. 1st Cir.12/28/99), 765 So.2d 366, 368 n. 1, writ denied, 00-0264 (La.3/24/00), 758 So.2d 156, in which this court reviewed and applied the jurisprudential guidelines applicable to UM rejection forms executed before that date, but noted:
Subsequent to the incident at issue, La. R.S. 22:1406 was revised by 1997 La. Acts No. 14[76] to require that insurers use the form prescribed by the commissioner of insurance. (Emphasis added).
We note also that in Evans, 765 So.2d at 369, and in Esteve, 818 So.2d at 1002, this court repeated the supreme court's mantra from Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213, 1215, that a UM rejection form does not meet statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. The UM rejection forms used in this case did not inform the insured of the "economic-only" options.
Nothing is better settled than the principle that, in the construction of a law, its meaning must first be sought in the language employed in the statute. If that is plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it. Thus, interpretation of any statute begins with the language of the statute itself. When the wording of any of Louisiana's revised statutes is clear and unambiguous, "the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. If application of a clear and. unambiguous statute does not lead to absurd results, the law shall be applied as written; no further interpretation may be made in search of the intent of the legislature.
*73 LSA-C.C. art. 9; David v. Our Lady of the Lake Hosp., Inc., 02-2675 (La.7/2/03), 849 So.2d 38, 46. The language of the statute we are reviewing could not be more clear-any UM rejection form executed before September 6, 1998, "shall be valid only until the policy renewal date; thereafter, the rejection shall be on a form prescribed by the commissioner" of insurance. The UM rejection forms were not executed before September 6, 1998, and when executed by Mr. Bonvillain in October 1998, were not on the form prescribed by the commissioner of insurance. We hold, therefore, that those UM rejections were not valid.[9]

Validity and Continuing Effect of Earlier UM Rejections
Possibly anticipating this court's conclusion concerning the October 1998 UM rejections, USF & G argues that it has provided insurance coverage to the parish continuously since the 1992 resolution of the parish council concerning rejection of UM coverage. Therefore, it maintains that any valid rejection of UM coverage during that time period covers all subsequent policy renewals or substitutes, even if UM rejections were not executed for each of those later policies. Specifically, USF & G contends that UM rejections signed on behalf of the parish on January 1, 1996, covered the umbrella and excess policies, the renewals of those policies issued January 1, 1997, and the substitute policies issued July 1, 1998.
Since 1975, Louisiana Revised Statute 22:1406(D)(1)(a) has included a sentence governing UM rejections on renewal policies that, with minor amendments, states:
Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
This sentence remains part of item (D)(1)(a)(i) of the statute and has been clarified and expanded by provisions added to item (D)(1)(a)(ii) by 1999 La. Acts, No. 732, § 1.[10]
*74 In connection with its motion for summary judgment, USF & G provided the affidavit of Jeffrey L. Fisher to explain the sequential USF & G policies applicable to the parish.[11] He stated that before January 1, 1997, USF & G issued two types of policies to the parish, an excess automobile liability policy and a commercial liability umbrella policy. On January 1, 1996, the parish executed UM rejection forms for both of the policies in effect at that time. Those policies were renewed on January 1, 1997, and had coverage dates of January 1, 1997, to January 1, 1999. On July 1, 1998, both of those policies were replaced with substitute policies having coverage dates of July 1, 1998, through January 1, 2000. The substitute policies were in place when the accident occurred. On the basis of this sequence of events, USF & G argues that the UM rejection forms executed in 1996 continued to be effective through the subsequent renewals and substitution of the excess and umbrella policies covering the parish.
As is the case with the validity of the various forms previously used for UM rejections, the subject of what constitutes a new policy, as opposed to a renewal, reinstatement, or substitute policy has been the source of considerable litigation. See, e.g., Barnickel v. Myles, 98-2613 (La. App. 1st Cir.12/28/99), 757 So.2d 29 and cases cited therein. However, we do not reach that question, as we find there is a genuine issue of material fact concerning the validity of the 1996 UM rejections. Although the evidence in this case fully supports the authority of Mr. Bonvillain to execute UM rejections on behalf of the parish, he was not the person who executed the 1996 UM rejection forms. Those were executed by Danny P. Domangue, who was the risk manager for the parish.[12] In his deposition, Mr. Bonvillain said he was uncertain whether the parish council had ever authorized Mr. Domangue to execute such documents. He said, "there's a possibility it can be approved by the risk manager, certainly. But I don't know the exact ... authority that the risk manager had over this." The record contains no further information concerning whether Mr. Domangue had been delegated such authority or whether, simply by virtue of his capacity as risk manager for the parish, he had actual or apparent authority to execute UM rejection forms.
Corporate authority may be explicitly or implicitly proved, but must be proved by admissible evidence. Stewart, 784 So.2d at 746. The same is true for an employee's authority to act for a governmental agency. Whether an employee has the apparenti.e., legalauthority to reject UM coverage is a factual determination. The burden of proving actual authority is on the party seeking to bind the governmental body by the actions of its employee. See Desormeaux v. Lalonde, 578 So.2d 226, 230 (La.App. 3rd Cir.), writs denied, 581 So.2d 705 and 706 (La. 1991); Walker, 606 So.2d at 9. In cases in which apparent or implicit authority to *75 sign UM rejections was found, there were facts in evidence from which that conclusion could be drawn. See, e.g., Delaune v. State Farm Mut. Auto Ins. Co., 529 So.2d 1289 (La.App. 3rd Cir.1988); Randazzo v. Segura, 514 So.2d 469 (La. App. 3rd Cir.1987); Ruiz v. Lewis, 579 So.2d 1203 (La.App. 4th Cir.), writ denied, 586 So.2d 562 (La.1991). Although Mr. Domangue may well have had such authority, the evidence submitted by USF & G in support of the motion for summary judgment simply does not establish it. We find there is a genuine issue of material fact concerning whether Mr. Domangue had authority to sign UM rejection forms on behalf of the parish. Because the record before us does not have the evidence needed to carry USF & G's burden of proving that the 1996 UM rejections were valid, we cannot uphold the trial court's judgment on the grounds that these rejections continued in the subsequent renewals and substitute policies.
Having found that the October 1998 UM rejections were invalid for failure to adhere to the statutory requirements, and that USF & G failed to carry its burden of proof that the January 1996 UM rejections were signed by one with authority to execute those documents as the legal representative of the insured, we must reverse the judgment of the trial court and remand this matter for further proceedings.

CONCLUSION
Based on the foregoing, the judgment of the trial court is reversed, and the case is remanded for further proceedings. All costs of this appeal are assessed against USF & G.
REVERSED AND REMANDED.
NOTES
[1] According to the petition, her injuries included severe traumatic brain injury, lacerations of the liver and spleen, a punctured lung, rib fractures, three fractured vertebrae, a bulging disc between L-5 and S-1, numbness in the lower back and legs, and pain in the lower back, shoulders, and neck.
[2] The parish later intervened to recover the workers' compensation payments it had paid and was continuing to pay.
[3] This suit was later consolidated for purposes of trial with another lawsuit arising out of the same accident. The consolidation does not affect the matters before this court on appeal. Additionally, Ms. Richardson and the parish dismissed their claims against the Lotts and State Farm, reserving any claims they might have against other parties, and specifically reserving all claims the parish might have against State Farm for workers' compensation payments made to the other two officers.
[4] The record also contained a UM rejection form for the umbrella policy executed by Mr. Bonvillain on October 18, 1998. There is no explanation for the different signing dates in the record.
[5] However, the judgment did not indicate whose claims were dismissed by the court's action granting the motion. After this court pointed out this discrepancy to the parties, an amended judgment was entered to clarify that Ms. Richardson's claims were dismissed, and the record on appeal was supplemented to include that judgment.
[6] "Economic-only" coverage, which is UM coverage with an exclusion for non-economic loss, became available as an alternative to full UM coverage by 1997 La. Acts, No. 1476, § 3, effective September 6, 1998. Non-economic loss is defined as "any loss other than economic loss," including such items of damage as pain, suffering, inconvenience, and mental anguish. LSA-R.S. 22:1406(D)(1)(a)(i).
[7] This portion of the statute has since been further amended by 1999 La. Acts, No. 732, § 1 and 2003 La. Acts, No. 456. Among other changes, the language emphasized above was deleted by Act 456.
[8] In several cases, this court mentioned the amendments to the statute but did not address the issue, because the UM rejection forms were executed before the effective date of Act 1476. See, e.g., Bel v. State Farm Mut. Auto. Ins. Co., 02-0360 (La.App. 1st Cir.2/14/03), 845 So.2d 459, 464 n. 7, writ denied, 03-0734 (La.5/30/03), 845 So.2d 1058; Dardar v. York, 00-0339 (La.App. 1st Cir.3/28/01), 808 So.2d 519, 521 n. 2; Thigpen v. RPM Pizza, Inc., 99-1146 (La.App. 1st Cir.9/22/00), 772 So.2d 704, 707-08 n.2, wri denied, 01-0114 (La.3/30/01), 788 So.2d 1189; Reily v. Frey, 99-1166 (La.App. 1st Cir.6/23/00), 762 So.2d 728, 729. In others, the UM rejection form used by the insured was the new form prescribed by the commissioner of insurance for use after that date. See, e.g., Esteve, 818 So.2d at 1003; Smith v. Terrebonne Parish Consol. Gov't, 02-1423 (La. App. 1st Cir.7/2/03), 858 So.2d 671; Butler v. Allen, 00-1726 (La.App. 1st Cir.9/28/01), 808 So.2d 746, 747-48, writ denied, 01-2924 (La.2/1/02), 808 So.2d 331.
[9] In Stewart v. Edwards, 34,435 (La.App. 2nd Cir.4/4/01), 784 So.2d 740, 744, the second circuit reviewed Daigle, 691 So.2d at 1214-15, where the supreme court said, "Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute," adding in a footnote, "The legislature did precisely that in a 1997 amendment to the UM insurance statute, when it finally mandated a required form to be used by insurers for UM coverage." Stewart, 784 So.2d at 744 n. 5. Therefore, we believe our conclusion in this case aligns this court with the second circuit on this issue.
[10] The 1999 amendment added the following as the fifth, sixth, seventh, and eighth sentences:

The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Subsection, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
[11] Mr. Fisher is an officer of Discover Re Managers Ltd., the authorized representative of USF & G in connection with the policies it issued to the parish.
[12] Mr. Bonvillain executed UM rejection forms on USF & G policies in 1993, but Mr. Domangue executed UM rejection forms in 1995. The 1995 forms indicate the policies were issued by TIG Insurance Company (TIG). Other than sharing Discover Re as an agent, the relationship between USF & G and TIG is unclear. We cannot apply the renewal provisions of the statute to the 1993 UM rejections, because we are unable to determine from the record that the 1995 TIG policies were issued by an "affiliate" of USF & G, such that the 1993 UM rejections might remain in place through the subsequent policies until the accident date.