CARTER, C.J.
| ¡.The defendant/appellant, National Automotive Insurance Company (National), challenges a district court ruling in favor *280 of the plaintiff/appellee, Caprice Freeman (Caprice), holding that a uninsured/under-insured motorist (UM) insurance rejection form was invalid. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On December 27, 2000, Caprice Freeman was involved in an automobile accident and was injured. The insurance company for the driver of the other vehicle tendered its $10,000 policy limits. Thereafter, Caprice filed a petition for damages against her own insurer, National, for UM coverage, alleging that her damages exceeded the policy limits of the tortfeasor’s insurance. National denied the claim, maintaining that Caprice’s claim should be dismissed because UM coverage had been rejected before the accident occurred. National filed a motion for summary judgment based on a UM rejection form allegedly signed by Caprice’s father, Eddie E. Freeman, on July 28, 2000. After a hearing, the district court denied National’s motion for summary judgment and the matter proceeded to trial on the merits.
At trial, the only contested issue was the validity of the UM rejection form. Lucy Richey, the insurance agent who sold the pertinent insurance policy to Caprice’s family, testified at trial. Ms. Richey stated that Vickie Freeman (Caprice’s mother) contacted her by telephone in July 2000 to request a quote for “full insurance coverage” for her family’s three vehicles that she, her husband (Eddie), and her children, including her daughter Caprice, all drove. Ms. Richey testified that she explained the available insurance coverages to Vickie, including the optional coverage for UM, | ¡¿rental, and medical payments. Ms. Richey understood that Vickie was interested in obtaining the cheapest possible rate while fully insuring her vehicles and allowing all of her children to drive the vehicles.
Ms. Richey admitted that she never spoke to Vickie’s husband, Eddie. Ms. Richey stated that she wrote the policy on July 28, 2000, and listed Vickie as the policy holder/named insured, with Eddie and the children listed as insured drivers. This was the first policy of insurance that Vickie and her family purchased through Ms. Richey’s agency. Vickie testified that she was the person in her family who was responsible for securing insurance coverage. She also testified that she asked Ms. Richey to allow her to send her twenty-one-year-old daughter, Caprice, to sign the insurance application and to pay the premium because she was working and wanted the policy to be effective the next day (July 29, 2000). Ms. Richey agreed that Caprice could sign the paperwork, because Ms. Richey was personally familiar with the family and she knew that Caprice was of legal age. Vickie instructed her daughter to go to Ms. Richey’s office to sign the paperwork and to pay the premium.
When Caprice arrived at Ms. Richey’s office, Ms. Richey directed Caprice to sign her father’s name on the UM rejection form, rather than sign her mother’s name or her own name. Ms. Richey had no explanation as to why she told Caprice to sign her father’s name instead of her mother’s name, even though the policy was issued in Vickie’s name and Ms. Richey had only spoken to Vickie regarding the insurance coverage. Ms. Richey testified that she explained to Caprice that her mother did not desire to have UM coverage. Ms. Richey acknowledged that she had never spoken to Eddie concerning any insurance issues, including the UM rejection form. |4She also admitted that she did not call Eddie to obtain his permission for Caprice to sign his name. The trial testimony revealed that neither Vickie nor *281 Caprice had permission to sign any form on behalf of Eddie. Both Vickie and Caprice indicated that Eddie had no knowledge that his daughter was signing the insurance papers for him or his wife. Eddie did not testify at trial.
The testimony conflicted as to whether Ms. Richey had ever explained UM coverage to Vickie or that “full coverage” did not include UM coverage, which was optional. Caprice’s testimony contradicted Ms. Richey’s testimony in that Caprice stated that Ms. Richey did not explain UM coverage to her before directing her to sign the UM rejection form on behalf of her father. Additionally, Vickie testified that she never received a copy of the UM rejection form and she was not aware that her family did not have UM coverage until after Caprice’s accident in December 2000.[1]
After a trial on the issue of the validity of the July 28, 2000 UM rejection form, the district court found that Eddie never gave his daughter Caprice permission to sign the UM rejection form on his behalf. Additionally, the district court found that Ms. Richey never spoke to Eddie and should never have requested that Caprice sign the UM rejection form on behalf of her father without first speaking to him and obtaining his permission for the signature. Thus, the district court held that the UM rejection form was invalid, and proceeded to award National’s policy limits | Rof $10,000 UM coverage to Caprice after stipulations were accepted regarding liability and medicals.
National now appeals, arguing that the district court erred, initially when it denied the motion for summary judgment, and subsequently when it failed to uphold the validity of the UM rejection form after a trial on the issue.
ANALYSIS

Summary Judgment

We find no merit to National’s argument that the trial court erred when it denied its motion for summary judgment. National had the burden of proving that the insured named in the policy (Vickie) rejected UM coverage in writing. LSA-C.C.P. art. 966 C(2); Richardson v. Lott, 03-0189 (La.App. 1 Cir. 11/7/03), 868 So.2d 64, 69, writ denied, 03-3324 (La.2/13/04), 867 So.2d 707. Material issues of fact existed surrounding the signature and the authority for the signature on the UM rejection form. Vickie did not sign the form. She was the named insured in the policy. The policy covered her husband as a driver, but there were factual issues as to what, if any, authority Vickie and/or Eddie gave to Caprice regarding the signing of the UM rejection form. Thus, there was no error in the trial court’s denial of National’s motion for summary judgment.

Validity of UM Rejection

The validity of a rejection of UM coverage form is determined by the law in effect at the time the rejection was executed. Dyess v. American Nat. Property and Cas. Co., 03-1971 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, 04-1858 (La.10/29/04), 885 So.2d 592. At the time | fithat the instant rejection of UM coverage was signed (July 28, 2000), Louisiana Revised Statute 22:1406 D provided in pertinent part:
*282 (l)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ...; however, the coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(l)(a)(ii) of this Subsection ....
(ii) ... such rejection ... shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.... A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage. ...
(Emphasis added.)[2]
It is well settled that LSA-R.S. 22:1406 D is to be liberally construed in favor of providing UM coverage and that a rejection of the coverage provided by law must be clear and unmistakable. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213, 1214. A valid rejection must be expressly set forth in writing and signed by the insured or his authorized legal representative. See Dardar v. York, 00-0339 (La.App. 1 Cir. 3/28/01), 808 So.2d 519, 521. The rejection of UM coverage must be effected through some affirmative act of the insured. Henson v. Safeco Ins. Co., 585 So.2d 534, 539 (La.1991). The insurer bears the burden of proving that an insured named in the policy or his legal representative rejected UM coverage in writing. Id. at 539.
In the present case, Vickie discussed the insurance coverage she desired in a telephone conversation with Ms. Richey. On July 28, 2000, LVickie sent her daughter, Caprice, to sign the necessary paperwork to bind coverage and to pay the premium. At Ms. Richey’s direction, Caprice signed her father’s name on the insurance application and UM rejection form. The only issue revolves around Caprice’s authority to reject the UM coverage on behalf of her father. In other words, was Caprice her father’s “legal representative?”
As the named insured’s spouse and someone who was named in the policy as an insured driver, Eddie could have signed the UM rejection form in either his own right or as Vickie’s legal representative. Bel v. State Farm, Mut. Auto. Ins. Co., 02-0360 (La.App. 1 Cir. 2/14/03), 845 So.2d 459, 462, writ denied, 03-0734 (La.5/30/03), 845 So.2d 1058. The law allows any insured named in the policy to reject UM coverage if it is done in writing and on the prescribed form. Smith v. Terrebonne Parish Consol. Government, 02-1423 (La.App. 1 Cir. 7/2/03), 858 So.2d 671, 676. However, that is not the scenario with which we are presented. The evidence is undisputed that Eddie did not have knowledge of his daughter signing the insurance papers, and Eddie never gave his daughter authority to sign any paperwork, including a UM rejection form, on his behalf.
The mandatory UM coverage provisions of LSA-R.S. 22:1406 D embody strong public policy. Richardson, 868 So.2d at 70. If rejection of UM coverage *283 is ambiguous, it is ineffective, regardless of the parties’ intent. If the rejection is unambiguous, but not in proper form, it is also ineffective. Therefore, unless the insured’s expressed desire to reject UM coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Richardson, 868 So.2d at 71.
| Neither Vickie nor Eddie engaged in any affirmative act that indicated that either one of them rejected UM coverage. There was no evidence that Vickie requested that her daughter, Caprice, sign the UM rejection form on her behalf. There was only evidence that Vickie requested that her daughter sign the paperwork to bind the insurance coverage and pay the premium. There was no evidence that Eddie requested that his daughter, Caprice, sign the UM rejection form or any other paperwork on his behalf. There was no evidence that Ms. Richey had discussed anything with Eddie, and there was no evidence that Eddie desired to reject UM coverage. Thus, we must conclude, as did the district court, that the UM rejection form with Eddie’s name signed by his daughter was invalid.
Furthermore, under the specific facts of this case, we decline to find that Caprice had her father’s apparent authority to sign the UM rejection form. We have considered the issue of apparent authority from Ms. Richey’s viewpoint, examining the reasonableness of her belief that Caprice had authority to sign the UM rejection form on behalf of her father. See AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La.App. 1 Cir. 1980). We conclude that if Caprice had signed her mother’s name or her own name on the UM rejection form, it would be much easier to support a finding of apparent authority since it is undisputed that Caprice’s mother sent Caprice to sign the insurance paperwork. However, since Ms. Richey never discussed the insurance coverage with Caprice’s father, it was unreasonable for her to assume that Caprice had authority to sign Eddie’s name. The issue of apparent authority to reject UM coverage is a factual determination. See Richardson, 868 So.2d at 74. The evidence simply does not establish that Caprice had any authority to sign the |9UM rejection form on behalf of her father. We find no manifest error in the trial court’s credibility assessments and factual determinations in this case. It follows that the UM rejection form was invalid, and Caprice was entitled to the trial court judgment establishing that National’s policy provided UM coverage at the time of the accident.
CONCLUSION
For these reasons, we affirm the district court’s judgment in favor of plaintiff, Caprice Freeman. Appeal costs are assessed against the defendant/appellant, National Automotive Insurance Company.
AFFIRMED.
McDONALD, J., concurs and assigns reasons.

. Some trial testimony revealed that Vickie personally signed a valid UM rejection form in November 2000, when she added another vehicle to the policy for another one of her children. However, the witnesses testified that the UM rejection form in November 2000 applied only to the additional vehicle and driver, and did not alter the terms of the July 2000 policy.

. Pursuant to Acts 2003, No. 456, Sec. 3, LSA-R.S. 22:1406 D has been amended and redesignated as 22:680. The amendments contained therein are not pertinent to this appeal.